**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| **CONTINENTAL CEMENT COMPANY, L.L.C.,**<br><br>Plaintiff,<br><br>v.<br><br>**LINWOOD MINING AND MINERALS CORP., et al.,**<br><br>Defendants. | Case No. 3:24-CV-00015-RGE-HCA<br><br>**PLAINTIFF'S MOTION TO AMEND SCHEDULING AND TRIAL SETTING ORDER (DOC. 143)** |

Plaintiff Continental Cement Company, L.L.C. ("Continental"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 16(b), 26(a)(2)(D), and L.R. 16(f), respectfully moves the Court to modify the deadlines set forth in the Scheduling and Trial Setting Order ("Scheduling Order") (Doc. 143) and enter Continental's proposed Amended Scheduling and Trial Setting Order attached as **Exhibit 1**.

Continental has been diligently prosecuting this case in an effort to meet the current schedule. However, the additions of AMSCO, Inc. ("AMSCO") and Lafarge North America Inc. ("Lafarge") as defendants, the parties' initial settlement discussions, Lafarge's unsuccessful motions to dismiss, voluminous written discovery, and on-site inspections of Continental's and Defendant Linwood Mining and Minerals Corp.'s ("Linwood") properties have compressed the schedule, necessitating an extension of the current timeline. Thus, the proposed extensions are necessary to allow sufficient time for the parties to complete fact and expert discovery, which, in turn, will necessitate slight extensions of time to complete pretrial and dispositive motion briefing. Consequently,

good cause exists to grant Continental's Motion to Amend the Scheduling Order as outlined herein.[1]

## **BACKGROUND**

This case is about who is responsible for groundwater contamination identified in and around Continental's onsite cement kiln dust landfill, which is used in conjunction with its cement plant in Davenport, Iowa. Continental asserts the contamination is caused by its neighbors Linwood, Carmeuse Midwest LLC ("Carmeuse"), and AMSCO and, to the extent the landfill is contributing to the contamination, that contamination predates Continental's ownership and is Lafarge's responsibility.

Continental asserts CERCLA, tort, injunctive relief, and contractual claims against Linwood; CERCLA, tort, and injunctive relief claims against Carmeuse and AMSCO; and CERCLA and contractual claims against Lafarge (Doc. 97). Given the nature of the environmental claims and the long history of the properties at issue,[2] this case involves a significant number of documents and witnesses and requires expert opinions to explain, among other things, how the parties' respective operations have impacted the environment in and around the landfill, which of Continental's response costs are recoverable under CERCLA, and how to equitably allocate fault between the parties under CERCLA.

---

[1] While all parties agree the Scheduling Order needs to be modified to extend the deadlines to complete fact and expert discovery and file pretrial motions, Continental and Defendants do not on how much additional time is needed, nor does Continental agree with Defendants' proposal to bifurcate expert discovery (Doc. 166 at 7-12), as outlined herein.

[2] For example, Linwood began discharging air emissions from its lime kilns into mined out areas underneath both the Continental and Linwood properties in or about 1973, and AMSCO began injecting a slurry consisting of, among other things, lime kiln dust and fly ash into mined out areas in or around 1993. Lafarge operated at what is now the Continental property from approximately 1991 to 2015.

**I.     Continental has made significant progress on fact discovery to date, and all parties agree additional time is needed to complete fact and expert discovery and pretrial briefing.**

At the outset of this case, the original parties—Continental, Linwood, and Carmeuse—agreed to bifurcate discovery between fact and expert discovery phases, recognizing that the experts would need the underlying factual data for their analyses, opinions, and reports (Doc. 15 at 1-2).

With respect to fact discovery, all initial disclosures were exchanged by July 11, 2025, with Lafarge and AMSCO serving theirs in December 2024 and July 2025, respectively, based on when they were added to the case.

In the fall of 2024, the original parties exchanged their First Sets of Interrogatories and Requests for Production and responded to the same.

Continental amended its Complaint on March 17, 2025, to add claims against AMSCO (Doc. 75). Thereafter, the parties spent April and May 2025 preparing for and holding in-person settlement discussions in Minneapolis. Because the parties did not resolve their differences (Doc. 90), Continental filed its Second Amended Complaint on June 26, 2025, this time adding claims against Lafarge (Doc. 97). Lafarge filed motions to dismiss on July 16 and July 25, 2025 (Docs. 105, 115), which were fully briefed during July and August 2025 and argued on October 8, 2025. Consequently, Continental served its First Set of Interrogatories and Requests for Production on AMSCO in January 2026, and AMSCO responded in February 2026.

After Lafarge's motions to dismiss were denied on December 22, 2025 (Doc. 153), Lafarge and Continental served their First Sets of Interrogatories and Requests for

3

Production on each other on February 6, 2026. Continental responded on March 9, 2026, and Lafarge is set to respond by April 9, 2026. Once all documents and responses have been received and reviewed, the parties may need to serve supplemental written discovery requests.

All told, Continental has produced 45,221 documents; Linwood has produced 1,354,668 documents; Carmeuse has produced 166,756 documents; Lafarge has produced 109 documents (104 of those documents were photos taken at the January 2026 site inspections discussed below); and AMSCO has produced one document (although Continental notes that Linwood included some AMSCO-related documents in its productions). Between June 2024 and the present, Continental has devoted significant time to reviewing the Linwood Defendants' document productions, publicly available documents, and its own documents to respond to Defendants' requests.

In addition, Lafarge and Continental have filed several Notices of Intent to Serve Document Subpoenas and are in the process of serving the subpoenas on multiple third parties that provided engineering and/or environmental consulting services at the properties at issue (Docs. 160-165). Responses are expected in late April and mid-May.

Finally, as set forth in the Joint Status Report (Doc. 166), the Parties conducted site inspections of the Continental and Linwood properties on January 19, 2026. Outside counsel and litigation experts participated in the site inspections.

As outlined above, Continental has been diligently proceeding with the discovery process, serving and responding to discovery requests, reviewing and producing documents, engaging in non-party discovery, and conducting site inspections. Continental

has also been engaged in adding relevant parties, amending pleadings, and responding to motion practice related to the same. Nonetheless, Continental, like Defendants, needs more time to complete fact discovery, including finishing document productions and reviewing the same, and taking fact witness depositions. To that end, all parties agree that the deadline to complete fact discovery should be extended **from June 29, 2026, to December 31, 2026**.

Given that fact discovery is ongoing, expert discovery has not yet started. As stated in their most recent Joint Status Report (Doc. 166) and at the March 30, 2026, Scheduling Conference, the parties agree the expert discovery deadlines need to be revised. However, the parties do not agree on how expert discovery should proceed and when it should be completed, further complicating agreement on deadlines for pretrial motions, a settlement conference, and trial.

## ARGUMENT

**I.    Good cause exists to extend the Scheduling Order deadlines.**

Fed. R. Civ. P. 16(b)(4) and L.R. 16(f) provide that scheduling orders may be modified for good cause shown and with the Court's consent. The measure of good cause is the parties' diligence in attempting to meet the existing deadlines. *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 716–17 (8th Cir. 2008). Courts have granted motions to amend a scheduling order when good cause is shown to allow for longer discovery in complex cases. *See, e.g., United States v. Kordorwu*, No. 23-CR-27 (ECT/TNL), 2023 WL 2071465 at *1 (D. Minn. Feb. 17, 2023) (granting motion to amend scheduling order in "a complex matter involving voluminous discovery materials"); *Vershey Meridian Sec.*

*Ins. Co. v. Madison*, No. 19-CV-1625 (ECT/LIB), 2020 WL 9179591 at *3 (D. Minn. Nov. 30, 2020) (granting motion to amend scheduling order in part due to "complex construction issues" requiring inspections); *Acosta v. Holland Acquisitions, Inc.*, No. 2:15-CV-1094, 2017 WL 4685304 at *3-4 (W.D. Pa. Oct. 18, 2017) (granting motion to amend scheduling order in complex case involving "complex and contentious" discovery where "parties were actively engaged in discovery"); *Roth v. BASF Corp.*, No. C0-07-00176-MJP, 2008 WL 4163127 at * 4 (W.D. Wash. Sept. 4, 2008) (granting motion to amend scheduling order when new claims "change[d] the legal landscape" and required complex legal analysis and investigation).

When a party opposes modifying the scheduling order, courts must also look to "[t]he existence or degree of prejudice to the party opposing the modification." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). In this case, Continental has diligently attempted to meet the current deadlines, and none of the parties oppose an extension. Accordingly, no party will be prejudiced by an amendment to the Scheduling Order. Indeed, Continental has served its First Sets of Interrogatories and Requests for Production on all parties, produced 45,221 documents to date, reviewed many of the 1,521,534 documents produced by Defendants thus far, participated in two site inspections, and served two third-party subpoenas. While Continental has largely met the current fact discovery deadline in terms of written discovery and document production, Continental continues to review documents to prepare for fact witness depositions. It is also awaiting additional documents to be produced by Lafarge with its April 9 discovery responses and the non-party consultants that have been subpoenaed. Continental notes that this additional

6

time to complete fact discovery, which all parties have agreed to, will not prejudice Defendants. Defendants have also requested additional time to complete fact discovery due to the volume of documents and information in this case and the need to complete fact witness depositions (Doc. 166 at 9-11).

In addition, all parties agree additional time is needed to complete expert discovery. As noted above, the original parties to the case—Continental, Linwood, and Carmeuse— agreed to bifurcate discovery between fact and expert phases because of the complex nature of the environmental claims at issue. For example, with respect to CERCLA, the claims are heavily dependent on expert testimony to establish liability and allocate responsibility. The experts, in turn, must rely on the information disclosed during the fact discovery phase, including the ongoing groundwater monitoring results, documents relating to past and present groundwater investigations, Iowa Department of Natural Resources' records, and written discovery responses, which is why it is imperative that fact discovery be completed before expert discovery can start. All of these steps must be completed so that the parties can file dispositive motions, engage in settlement discussions, and prepare for trial.

Accordingly, good cause exists to extend the current fact discovery, expert discovery, and pretrial motion briefing deadlines. The only disputed issues left to resolve are whether expert discovery should be bifurcated and how long it should take.

## II. Continental does not support the bifurcation of expert discovery into "liability" and "allocation phases" and proposes a condensed expert discovery schedule to promote efficiency and avoid delay of justice.

While all parties agree to extend the deadlines in the existing Scheduling Order (Doc. 143), the parties disagree on whether expert discovery should proceed in one phase

or be bifurcated into two phases ("liability" and "allocation"), with intervening summary judgment briefing and/or a trial (*See* Doc. 166 at 3-12).

The Federal Rules of Civil Procedure grant this Court broad authority to manage the scheduling and pretrial phases of litigation and to set deadlines and manage the sequencing of expert disclosures for the parties' and witnesses' convenience and in the interests of justice. Fed. R. Civ. P. 16(b), 26(a)(2)(D), (d)(3); *Petrone v. Werner Enters.*, 940 F.3d 425, 434 (8th Cir. 2019) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) ("A 'district court has broad discretion in establishing and enforcing the deadlines.'")).

## A. Continental's Proposal.

As reflected in Continental's proposed schedule in **Exhibit 1**, Continental believes expert discovery can proceed in one phase that addresses all issues to promote efficiency, judicial economy, and resolution of the case. Under Continental's proposed schedule, Continental would provide all of its expert opinions on liability, allocation, and affirmative defenses **by April 1, 2027**. Defendants would respond to Continental's expert reports and put forth their expert reports on the claims and counterclaims between them **by July 1, 2027**. Continental would then issue rebuttal reports and Defendants would disclose their responses to each other **by September 1, 2027**, and Defendants would issue their rebuttal reports on the claims and counterclaims between them **by October 1, 2027**. Once all reports have been issued, expert depositions would take place between **October 15, 2027, and March 15, 2028**. To maintain a schedule that is generally consistent with the current

scheduling order (Doc. 143), Continental proposes that dispositive motions be filed **by May 1, 2028**, meaning the parties would be trial-ready **by September 28, 2028**.

### B. Defendants' Proposal.

In the most recent Joint Status Report (Doc. 166 at 9-11), Defendants proposed that Continental file its opening expert reports on "liability" only by **March 1, 2027**. Defendants' responses to Continental's liability expert reports and Defendants' expert reports on the liability aspects of the claims and counterclaims between them would be due **by June 1, 2027**. In turn, Continental's rebuttal reports on liability would be due **by August 1, 2027**, and Defendants' responses to their opening liability reports would be due by **September 1, 2027**. Thereafter, Defendants' rebuttal reports on liability would be due **by November 1, 2027**, and liability expert depositions would begin the same day and end **by March 1, 2028**.[3]

Critically, Defendants propose not to start expert discovery on allocation until there has been a trial or summary judgment finding on liability against them, which means that the conclusion of Defendants' proposed schedule is indefinite and would likely delay **the ultimate resolution at trial to at least 2030** because there would be another round of expert discovery as to allocation.

---

[3] Defendants' proposed schedule in the Joint Status report (Doc. 166 at 11) contemplates a second round of rebuttal reports for Defendants' claims and counterclaims between them after depositions have concluded, but there is no similar round of extra rebuttal for Continental. Continental objects to a second round of rebuttal reports, especially given Continental would be given no opportunity to respond to information presented about the exact same properties and parties that are the subject of Defendants' claims and counterclaims.

**C. Defendants' Proposal should be rejected because it is unnecessary, will significantly delay the proceedings and prejudice Continental's rights, and the bona fide prospective purchaser defense does not require bifurcation.**

Based on the parties' meet and confer discussions, and their most recent Joint Status Report (Doc. 166 at 7-9, 11-12), Continental understands Defendants' position to be that expert discovery must be bifurcated into "liability" and "allocation" phases because their allocation experts need the complete "technical record"—including expert opinions on groundwater flow, fate and transport, fingerprinting, etc. (*i.e.*, "liability" opinions)—before finalizing their allocation opinions. Additionally, in the Joint Status Report (Doc. 166), Defendants cite to Continental's assertion of CERCLA's bona fide prospective purchaser defense to support the need for bifurcation of expert discovery into liability and allocation phases.

Continental strongly disagrees with Defendants' position because: (1) bifurcation of expert discovery is wholly unnecessary; (2) bifurcation of expert discovery will only delay and significantly prejudice Continental's rights to force cessation of the Linwood Defendants' ongoing pollution, mitigate its damages, address the IDNR's ongoing concerns, and resolve this case; and (3) Continental's bona fide prospective purchaser defense does not require bifurcation. Consequently, Continental's position is that expert discovery should not be bifurcated and should proceed with one round of written expert reports followed by expert depositions. Accordingly, Continental proposes that the schedule for expert discovery be amended as outlined in **Exhibit 1** for all of the reasons below.

### i. Bifurcation is wholly unnecessary.

Contrary to Defendants' position, bifurcation of expert discovery into liability and allocation phases is unnecessary because the same underlying body of facts—including historical ownership and operational records, waste disposal practices, environmental investigation data, and investigative and response cost documentation—is relevant to both liability (CERCLA Section 107, 42 U.S.C. § 9607(a)) and allocation (CERCLA Section 113, 42 U.S.C. § 9613(f)). Because this information will be produced during the fact discovery period, requiring separate rounds of expert discovery to address the same facts is inherently redundant and wasteful.

To put a finer point on it, under CERCLA Section 107, 42 U.S.C. § 9607(a), to prove liability, a plaintiff must show that a defendant is within one of four categories of potentially responsible parties—current owners/operators, past owners/operators, arrangers, and transporters; that a release or threatened release from a facility has occurred; that the plaintiff incurred response costs as a result; and that the costs were necessary and consistent with the National Contingency Plan. 42 U.S.C. § 9607(a); *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 934 (8th Cir. 1995). The equitable allocation inquiry under Section 113(f), 42 U.S.C. § 9613(f), then applies factors—such as the degree of involvement in disposal, the amount and toxicity of hazardous substances, the degree of care exercised, and the degree of cooperation with government officials (the "Gore Factors")—to apportion response costs among the same liable parties. *Control Data Corp.*, 53 F.3d at 935. Thus, the factual evidence establishing who the potentially responsible parties are and what they did at the site (liability) is the same evidence that informs

equitable allocation. *See id*. These are not separate factual universes; they are overlapping inquiries drawing on a common evidentiary base.

Continental agrees with Defendants that an additional six months is needed to complete fact discovery, which gives the parties adequate time to develop their expert opinions on both liability and allocation (as well as any other needed expert opinions) during the fact discovery period and, under Continental's proposal (**Exhibit 1**), the six months before Defendants provide their opening expert reports on July 1, 2027. In addition, under either Continental's version or Defendants' version of the Proposed Amended Pretrial Schedule, Continental will provide its written expert reports first. Thus, Defendants will have time to review those opinions and respond accordingly, making bifurcation unnecessary.

### ii. Bifurcation will result in delay and prejudice Continental's rights.

Bifurcation of expert discovery—particularly a bifurcation plan with an indeterminate end date—does nothing more than delay resolution, the possibility of realistic settlement negotiations, and, critically, the real-world problem of remediation.

A primary goal of the CERCLA cost-recovery framework is to "encourage timely cleanup of hazardous waste sites." *Control Data Corp.*, 53 F.3d at 935. Under Defendants' proposal, trial will almost certainly be delayed until at least 2030 (six years after the case was filed). This delay is not needed as, "[g]enerally, there is little doubt about liability under CERCLA," because "statutory defenses are quite narrow and because the act does not set a minimum threshold for liability." *United States v. Dravo Corp.*, No. 8:01-CV-

500, 2002 WL 1832274 at *4 (D. Neb. Mar. 6, 2002). Consequently, because of Defendants' counterclaims for CERCLA contribution, the real fight is the amount of Continental's recoverable damages and allocation of fault between the parties. *See id*. at *3-4.

Here, it is uncontested that the Linwood Defendants currently own and/or operate equipment that vents lime kiln emissions into the mine stopes and Linwood and AMSCO currently own and/or operate equipment that injects a slurry into the mine stopes, making the Linwood Defendants current owners or operators under Section 107(a), § 9607(a)(1). Likewise, it is uncontested that Lafarge previously owned the landfill at issue and disposed of cement kiln dust therein, making it a past owner or operator. *Id.* at § 9607(a)(2). The mine stopes and landfill are "facilities" under CERCLA, *id*. at § 9601(9) (defined to include landfills and any site or area where a hazardous substance has been deposited or disposed of). Continental has produced documents evidencing stope sludge and groundwater contamination in and around the mine stopes and landfill, meeting the CERCLA definition of "release," 42 U.S.C. § 9601(22) (defined as any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment of hazardous substances), § 9607(a). As such, the only elements of CERCLA Section 107 "liability" likely to be contested are Continental's response costs and their consistency with the National Contingency Plan, which can be addressed by the experts at the same time as allocation given the underlying factual record needed to opine on response costs and allocation will be disclosed during fact discovery.

13

Because CERCLA liability is likely to be established, postponing allocation-related discovery *until* liability is established precludes an expeditious resolution. *Id.*; *Elf Atochem N. Am., Inc. v. United States*, 161 F.R.D. 35 (E.D. Pa. 1995); *Smith v. BP Expl. & Prod. Inc.*, 2021 WL 12175638 at *1 (S.D. Miss. Oct. 7, 2021) (bifurcation of expert discovery "is not an efficient means of managing litigation because it results in piecemeal litigation that unnecessarily prolongs the ultimate resolution of the parties' claims" and "contemplates that the parties will file multiple rounds of dispositive motions, and request multiple status conferences, that would tax unnecessarily scarce judicial resources").

In addition, delaying trial for two to three years is extremely prejudicial to Continental (and the citizens of Iowa) because: Continental will continue to solely bear the burden of monitoring and remediation costs for problems it did not cause (which only continue to mount with no assistance or support from Defendants); Continental will be forced to continue to respond to IDNR concerns without the ability to address and stop the root cause—the Linwood Defendants' ongoing contributions; Continental will not be able to mitigate its damages (clean-up/remediation) because of the Linwood Defendants' ongoing impacts to the eastern portions of Continental's property; it permits continuing harm (such as trespass and nuisance) and damages to be imposed upon Continental by the Linwood Defendants' ongoing pollution of the stope and Continental's groundwater; it compounds the total cleanup/remediation costs due to the Linwood Defendants' continued pollution; and it unnecessarily delays and inflates litigation-related expenses, including expert fees, all while postponing the identification of a remedial solution. All of these things are in direct contravention of CERCLA's primary goal—encouraging timely

cleanup (and cessation) of hazardous waste sites; thus, Defendants' attempt to delay the case for an additional 2 to 3 years prejudices Continental's rights and should be rejected.

At the trial phase, courts have consistently held that bifurcation should not be the default approach and must be justified by specific circumstances. *Fair Isaac Corp. v. Fed. Ins. Co.*, 650 F. Supp. 3d 731, 735 (D. Minn. 2023). This principle applies equally to phasing expert discovery between liability and allocation, where courts are reluctant to bifurcate or trifurcate discovery unless it is clearly warranted by the circumstances of the case. *Dravo Corp.*, No. 8:01-CV-500, 2002 WL 1832274 at \*19; *Elf Atochem N. Am., Inc.*, 161 F.R.D. at 37. As much of the same testimony and evidence will be introduced during both the liability and allocation phases, the circumstances of the case dictate that bifurcation is a wasteful and burdensome exercise. "The separation of the issues in this case would not be in the interests of justice, would not promote convenience, and would not serve to expedite the proceedings in any conceivable way." *Id.* at \*5. Continental opposes bifurcation of expert discovery because "the longer the final judgment is postponed in this case, the more [Plaintiff] is prejudiced." *Elf Atochem*, 161 F.R.D. at 35.

### ii.    Continental's bona fide prospective purchaser defense does not require bifurcation of expert discovery.

Continental disagrees that its assertion of the bona fide prospective purchaser defense necessitates bifurcating expert discovery between liability and allocation, as the bona fide prospective purchaser elements at 42 U.S.C § 9607(r), § 9601(40) and 40 C.F.R. Part 312 implicate the same facts disclosed during fact discovery that inform liability and allocation, such as the nature and extent of contamination, the timing and sources of

releases, contaminant migration, and the relative contribution of the parties to existing conditions at the site. *Control Data Corp.*, 53 F.3d at 934 (explaining that, to prove liability under CERCLA, a plaintiff must show that a defendant is within one of four classes of covered persons listed in 42 U.S.C. § 9607(a)(1)-(4) (here, current or past owners or operators of the properties at issue), that a release or threatened release from the facility has occurred, the plaintiff has incurred response costs, and that the costs were necessary and consistent with the National Contingency Plan), 935 (setting forth allocation factors courts commonly apply in resolving CERCLA contribution claims, including the degree of involvement of the parties in the generation, storage, or disposal of the hazardous substances and the degree of cooperation by the parties with government officials to prevent harm to the public health or the environment); *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, 791 F. Supp. 2d 431, 498 (D.S.C. 2011), *aff'd,* 714 F.3d 161 (4th Cir. 2013) (explaining that, to establish the bona fide prospective purchaser defense, a party must show, among other things, disposal of the hazardous substances occurred before the party purchased the property and the party took reasonable steps to stop any releases and cooperated with the government to respond to the releases and protect the public health and the environment).

Expert witnesses in this case will base their opinions on the factual record assembled during fact discovery. That record includes site investigation reports, soil and groundwater sampling data, historical disposal records, regulatory correspondence, and fact witness depositions concerning the parties' activities at the site. Whether the expert is opining on the existence of a release (a liability question) or the relative contributions of the parties

16

and the equitable apportionment of response costs (an allocation question) or the elements of the bona fide prospective purchaser defense, the underlying data set is the same. At the close of fact discovery, the expert witnesses will have all of the evidence needed to inform their opinions regardless of topic. Separate phases of expert discovery are not needed, and bifurcating expert discovery will further delay resolution of this case by impeding settlement discussions[4] and extending the overall trial calendar.

Therefore, Defendants' proposal should be rejected to comport with CERCLA's goals, prevent delay and further prejudice to Continental, and because, bifurcation is wholly unnecessary in this case. The Court should, instead, adopt Continental's scheduling order proposed in **Exhibit 1**.

**CONCLUSION**

Fed. R. Civ. P. 16(b) and L.R. 16(f) give this Court discretion to modify the Scheduling Order for good cause shown, which is met here because Continental has diligently participated in adding parties, serving and responding to written discovery, producing and reviewing documents, and conducting site inspections. Further, Fed. R. Civ. P. 26(a)(2)(D) gives this Court discretion to set expert disclosure deadlines and sequence those deadlines as it sees fit. Here, entering a Scheduling Order that contemplates one round of expert reports and depositions best achieves efficient resolution of this case and serves the purpose of CERCLA to achieve the timely cleanup of contaminated sites. At the

---

[4] From Continental's perspective, although certain elements of CERCLA liability can be readily established, the parties will not be able to engage in productive settlement discussions until they have exchanged expert opinions on damages and allocation. Thus, delaying the deadline to provide expert opinions on those topics delays the possibility of realistic settlement discussions.

close of fact discovery, the parties will have all of the information needed to develop all opinions on liability, allocation, and affirmative defenses. The sooner all of these opinions are disclosed, the sooner the parties can be ready for trial or participate in meaningful settlement discussions. Accordingly, Continental respectfully requests the Court grant this Motion to Amend the Scheduling Order and enter an Amended Scheduling Order that adopts the proposed schedule attached as **Exhibit 1**, which extends the close of fact discovery to December 31, 2026, contemplates one phase of expert discovery that starts April 1, 2027, and concludes March 15, 2028, and requires the parties to file any pretrial motions by May 1, 2028. This approach puts the parties in a position to be trial ready by the fall of 2028.

Dated: April 8, 2026                                 Respectfully submitted,

_/s/ Sarah L. Struby_
Stephen E. Schemenauer IA# AT0014404
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
steve.schemenauer@stinson.com

Sarah L. Struby, admitted *pro hac vice*
STINSON LLP
230 W. McCarty Street
Jefferson City, MO 65101
Telephone: (573) 636-6263
Fax: (573) 636-6231
sarah.struby@stinson.com

Betsy Moedritzer, admitted *pro hac vice*
STINSON LLP
1201 Walnut St., Suite 2900
Kansas City, MO 64106
Telephone: (816) 691-3383
Facsimile: (816) 412-9307
betsy.moedritzer@stinson.com

**ATTORNEYS FOR PLAINTIFF
CONTINENTAL CEMENT COMPANY, L.L.C**

## CERTIFICATE OF SERVICE

I certify that on this 8th day of April, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

/s/ *Sarah L. Struby*

Sarah L. Struby

19