**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| CONTINENTAL CEMENT COMPANY, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> LINWOOD MINING AND MINERALS CORP., CARMEUSE MIDWEST, LLC, AMSCO, INCORPORATED, and LAFARGE NORTH AMERICA INC., <br><br> Defendants. | Case No. 3:24-CV-00015 <br><br> LAFARGE NORTH AMERICA INC.'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND SCHEDULING AND TRIAL SETTING ORDER AND REQUEST FOR ORAL ARGUMENT |

4915-4396-4068.2

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................1

II.     PROCEDURAL BACKGROUND..........................................................................3

III.    STANDARD OF REVIEW ......................................................................................4

IV.     ARGUMENT............................................................................................................4

        A.      Good cause exists to amend the Scheduling Order..................................4

        B.      The Court should reject Plaintiff's proposed amended schedule............5

        C.      The Court should enter Defendants' proposed amended schedule .........6

                1.      Defendants' proposed schedule is supported by Eighth Circuit
                        precedent, and it is necessary as a result of Continental's assertion
                        of a bona fide prospective purchaser affirmative defense to
                        CERCLA liability...................................................................................6

                2.      Continental's proposed schedule cannot be reconciled with the claims
                        it asserts against Lafarge in its *Second Amended Complaint*......................9

                3.      CERCLA prohibits "double recovery" of response costs and
                        Defendants' proposed schedule provides the structure for
                        preventing this impermissible outcome ...................................................11

                4.      Continental's proposed schedule does not allow the parties to develop
                        the record necessary for this Court to conduct the equitable allocation
                        required by CERCLA ..........................................................................13

                        a.      CERCLA allocation requires findings of causation and harm...... 13

                        b.      CERCLA allocation requires consideration of contractual
                                obligations related to pollution claims.........................................14

                5.      The Court should adopt Defendants' proposed amended pretrial
                        schedule..............................................................................................15

        D.      A scheduling conference and/or a hearing on Plaintiff's *Motion* will allow
                the parties to more fully inform the Court of the need to modify the existing
                schedule..................................................................................................18

V.      CONCLUSION......................................................................................................18

4915-4396-4068.2

Defendant Lafarge North America Inc. ("Lafarge") provides the following response to Plaintiff's *Motion to Amend Scheduling and Trial Setting Order* ("*Motion*").  Dkt. No. 169.

## I.    INTRODUCTION

Plaintiff Continental Cement Company LLC ("Continental") seeks declaratory relief and recovery of damages from Defendants[1] for alleged groundwater contamination beneath its property (the "Continental Property") pursuant to claims arising under contract, state common law, and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et. seq*.  Although the parties have been diligently working to pursue discovery and to develop the factual record, all parties agree that the current deadline for fact discovery should be extended from June 30, 2026 to December 31, 2026, and all parties agree the current deadlines for expert discovery should be amended as well.  However, Continental and Defendants have not been able to reach an agreement on the pretrial schedule for expert disclosures.

Continental contends liability and allocation expert disclosures should take place simultaneously – arguing that postponing any allocation-related expert disclosures until liability is established would unnecessarily delay the progress of this litigation and cause prejudice to Continental.  Lafarge contends liability issues must be determined before the disclosure of expert allocation reports because liability determinations (and the factual findings inherent thereto) are essential components of any CERCLA allocation.  For example, a party's CERCLA liability status is a necessary, statutory determination to be made before allocating response costs between parties in CERCLA contribution actions. *See* 42 U.S.C. § 9613(f) and the discussion and authorities in Section IV(C)(1), *infra*.  Moreover, resolution of Continental's contract and common law claims

---

[1]  Reference to Defendants herein includes Lafarge, Linwood Mining and Minerals Corp. ("Linwood"), Carmeuse Midwest, LLC ("Carmeuse"), and AMSCO, Inc. ("AMSCO").

1

against Defendants should occur before any CERCLA allocation proceedings because resolution of those claims will provide the necessary factual and legal foundation for this Court to perform its statutory obligation of allocating response costs in conformance with CERCLA.

In its *Motion*, Continental requests a "condensed" expert discovery schedule, arguing expert disclosures should not be sequenced between an initial liability phase and later allocation proceedings. Continental's central argument against bifurcation of expert disclosures is that the "same underlying body of facts" is relevant to both CERCLA liability and CERCLA allocation. (*Motion* at 7, 11). Although evidence related to groundwater conditions and the parties' respective activities at the Continental Property and/or the Linwood Property may be relevant to both CERCLA liability and CERCLA allocation, that does not support Continental's position because CERCLA allocation does not turn on unresolved, disputed facts. Instead, CERCLA allocation occurs *after* disputed issues have been resolved – *i.e.*, after a court determines who is a liable party, who is responsible for any releases or disposals of hazardous substances, who caused harm to the environment, who acted with due care and cooperated with regulators, who caused another party to incur response costs, etc.

These factual and legal determinations are necessary considerations for any CERCLA allocation, and they will not be known until the Court adjudicates liability associated with the CERCLA claims asserted by all parties; the contract dispute between Continental and Lafarge; the contract dispute between Continental and Linwood; and Continental's state law claims of trespass, nuisance, negligence, and negligence per se against Linwood, Carmeuse, and AMSCO. The following discussion demonstrates why the Court should adopt Defendants' proposed schedule for expert disclosures, and why Continental's position is unsupported by the record, CERCLA's plain language, and controlling authority from the Eighth Circuit Court of Appeals.

4915-4396-4068.2

## II.    PROCEDURAL BACKGROUND

Although Continental filed its original *Complaint* in February of 2024, the parties and pleadings were not set until two years later, in February of 2026.  The following table provides an overview of the key pleadings marking the development of the case in this regard:

| February 20, 2024 | Continental filed this action on February 20, 2024, asserting environmental contamination claims against Linwood and Carmeuse.  Dkt. No. 1. Continental alleged the actions of Linwood and/or Carmeuse have caused groundwater contamination beneath Continental's property, and Continental asserted state law claims of trespass, nuisance, injunctive relief, negligence, and negligence per se against both Linwood and Carmeuse, and contract claims against Linwood.  Continental also asserted federal statutory claims against both Linwood and Carmeuse under CERCLA. *See id.* |
|---|---|
| October 8, 2024 | Linwood and Carmeuse filed a Third-Party Complaint against Lafarge, asserting claims under CERCLA.  Dkt. No. 37 |
| February 6, 2025 | Lafarge filed a Fourth-Party Complaint against AMSCO, asserting claims under CERCLA.  Dkt. No. 64. |
| March 12, 2025 | Continental filed its First Amended Complaint, adding CERCLA and state common law claims against AMSCO.  Dkt. No. 75. |
| June 26, 2026 | Continental filed its Second Amended Complaint, adding contract and CERCLA claims against Lafarge.  Dkt. No. 97. |
| December 22, 2026 | The Court denied Lafarge's Motions to Dismiss Continental's claims against Lafarge.  Dkt. No. 153. |
| February 2, 2026 | The pleadings between Lafarge and AMSCO were finalized when Continental filed its Answer to Lafarge's Counterclaims.  Dkt. No. 157. |

On August 28, 2026, the Court entered an amended *Scheduling Order and Discovery Plan*. (Dkt. No. 143).  The Court's *Scheduling Order and Discovery Plan* stated that "[g]iven the current procedural posture and pending motions to dismiss; Lafarge and the other parties reserve the right to request modifications to the deadlines and limitations set in this Order." *Id.* at n. 1. As

demonstrated by the filing of Continental's *Motion*, and Defendants' respective *Responses*, all parties are exercising their reserved rights to request modifications to the deadlines and limitations set in the current scheduling order for good cause shown.

## III.    STANDARD OF REVIEW

Fed. R. Civ. P. 16(b)(4) and L.R. 16(1) authorize modification of scheduling orders with the Court's consent, upon a demonstration of good cause. Courts have inherent discretion to manage their dockets, and good cause for extending discovery is frequently found in complex cases with multiple parties who are diligently pursuing discovery and attempting to meet the requirements of the Court's scheduling order. *See, e.g., Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) *and Premcor Refining Group, Inc. v. Apex Oil Company, Inc.*, 2024 WL 3179705 (June 26, 2024 S.D. Ill.) (granting motion to enter a seventh amended scheduling order in a CERCLA case, reflecting a "phased approach" to discovery that separately addressed issues of liability and allocation).

## IV.    ARGUMENT

**A.    Good cause exists to amend the Scheduling Order.**

Lafarge agrees with Continental's assertion that good cause exists to amend the current Scheduling Order.  The parties have issued written discovery to each other and conducted a site visit with counsel and consultants in January of this year, and Lafarge and Continental have served multiple subpoenas duces tecum on consultants who have performed various technical, design, and environmental services related to the Continental Property over the past several decades.  As a collective, the parties have produced over 1.2 terabytes of materials, consisting of more than 1.5 million documents, and the first production of materials from one consulting company in response to a subpoena contains thousands of documents.  Additional materials are anticipated from that

consulting company, and the parties are still waiting on productions from the remaining five consulting companies who have been served with subpoenas.

In sum, the parties are diligently working to develop the factual record necessary to prosecute and defend the multiple claims asserted in this case. However, the evidentiary record spans decades, and a substantial portion of the relevant evidence appears to be in the possession of third parties from whom it often takes longer to obtain documents. This circumstance is also likely to require an expansion in the number of persons subject to deposition. For these reasons, good cause exists to amend the existing schedule in a manner that provides the parties with adequate time to complete discovery.

**B.      The Court should reject Plaintiff's proposed amended schedule.**

Although Continental contends it will suffer harm if the Court does not accept its proposed schedule, Continental's position is not supported by the facts or the procedural history of this case. Continental has been allowed to file two amended *Complaints*, each expanding the case to add new claims and/or new parties. As demonstrated in Section II *supra*, the pleadings and the parties to this case only became final in February of this year. CERCLA cases are notoriously complex, so they generally take longer than other types of civil litigation. For example, in *Cyprus Amax Minerals Co. v. TCI Pacific Communications, Inc.*, Case No. 11-CV-252-CVE-FHM (N.D. Okla.), the case did not proceed to trial until almost seven years after the Complaint was filed, and the case only involved CERCLA claims between one plaintiff and one defendant.[2] Continental will not suffer harm if the Court adopts Defendants' proposed schedule because this case is about who should pay the costs associated with the environmental contamination alleged by Continental. If

---

[2] In response to defendant TCI's rule 12(b)(6) Motion to Dismiss, the Court dismissed one of the two defendants and the plaintiff's only non-CERCLA claim (unjust enrichment). *See Opinion and Order* at Dkt. No. 142.

Continental proves its case, it will be made whole through entry of judgment(s) requiring the liable party(ies) to pay monetary damages to Continental.

Moreover, Defendants' proposed schedule does not create risks for the citizens of Iowa. (*Motion* at 14). The Iowa Department of Natural Resources ("IDNR") is the state governmental agency charged and empowered to protect Iowa air, land, and water. In furtherance of its responsibilities, IDNR is requiring Continental and Linwood to independently investigate the alleged groundwater impacts at issue in this litigation, and to develop plans to mitigate any impacts IDNR determines to exist. (*See Second Amended Complaint* at ¶¶ 48, 52-56).  No mitigation plans have been approved by IDNR, and the Continental and Linwood investigations that serve as a necessary prelude to such plans are ongoing.  (*See Second Amended Complaint* at ¶¶ 53-56).  In sum, the state agency responsible for protecting Iowa air, land, and water is actively involved at the site and it is ***currently*** addressing some of the complex technical matters at issue in this case. Defendants' proposed schedule will not alter or impair IDNR's work or its ability to protect the citizens of Iowa in this regard.[3]

**C.    The Court should enter Defendants' proposed amended schedule.[4]**

    **1.    Defendants' proposed schedule is supported by Eighth Circuit precedent, and it is necessary as a result of Continental's assertion of a bona fide prospective purchaser affirmative defense to CERCLA liability.**

Continental has asserted a bona fide prospective purchaser affirmative defense to each of the Defendants' CERCLA contribution counterclaims.  (*See* Continental's Answer to Linwood's

---

[3] Lafarge reserves its right to seek further adjustments to the schedule based upon IDNR's regulatory requirements and oversight, including the ongoing investigations being conducted by Continental and Linwood at the direction of IDNR.

[4] Although Lafarge and the other defendant parties are filing separate Responses to Plaintiff's Motion, all Defendants are advocating the same proposed schedule included in the Defendants' section of the parties' March 26, 2026 Joint Status Report.  (Dkt. No. 166).

4915-4396-4068.2

CERCLA Counterclaim (Dkt. No. 118, Affirmative Defense No. 18); Continental's Answer to Carmeuse's CERCLA Counterclaim (Dkt. No. 119, Affirmative Defense No. 18); Continental's Answer to AMSCO's CERCLA Counterclaim (Dkt. No. 120, Affirmative Defense No. 18); and Continental's Answer to Lafarge's CERCLA Counterclaims (Dkt. No. 157, Affirmative Defense No. 25)). Defendants do not concede that Continental qualifies as a bona fide prospective purchaser or that Continental is otherwise entitled to the protections afforded by that affirmative defense to CERCLA liability.

On the contrary, Defendants intend to prove that Continental is not entitled to bona fide prospective purchaser status so Continental is a potentially responsible party ("PRP") within the meaning of CERCLA § 107(a). *See* 42 U.S.C. 9607(a). The bona fide prospective purchaser defense is a fact-intensive determination requiring, *inter alia*, detailed evidence of the claimant's site activities and determinations of whether there have been releases of hazardous substances at the site during the claimant's tenure as an owner and/or operator of the site. Continental has owned and operated the Continental Property since 2015 so the parties' dispute with regard to Continental's attempt to avoid CERCLA liability through the bona fide prospective purchaser defense will require extensive technical evidence related to groundwater conditions (*e.g.*, concentrations of metals and other contaminants, pH levels, etc.) and groundwater flow patterns over time. The parties' respective experts will provide opinions on such matters and the Court, or a jury, will make factual determinations in this regard.

This issue (*i.e.*, Continental's CERCLA liability status) lies at the heart of the parties' present dispute regarding the schedule and the sequencing of expert disclosures. On the record before this Court, Continental's proposed schedule for expert disclosures cannot be reconciled with CERCLA's express language governing allocation of response costs. *See* 42 U.S.C. § 9613(f)(1).

7

Each Defendant has asserted a CERCLA contribution claim against Continental under CERCLA § 113. That section of the statute provides that:

> "In resolving contribution claims, the court may allocate response costs among *liable* parties using such equitable factors as the court determines are appropriate."

42 U.S.C. § 9613(f)(1) (emphasis added). As explained above, Continental has asserted a bona fide prospective purchaser affirmative defense to each Defendant's CERCLA contribution claim. If Continental successfully proves it is entitled to the protections afforded to a bona fide prospective purchaser, then Continental may argue it cannot be included in the group of "liable parties" to whom the Court may allocate the response costs at issue in this case. *Von Duprin LLC v. Major Holdings, LLC*, 12 4th 751, 769 (7th Cir. 2021) (recognizing that the bona fide prospective purchaser defense provides a defense to CERCLA liability); *accord Dico, Inc. v. Amoco Oil Co.*, 340 F.3d 525, 531 (8th Cir. 2003) ("When one of the enumerated CERCLA defenses applies a PRP is deemed innocent; and an action between an innocent party and another PRP is not between two liable parties.").

Put simply, before this Court can perform its statutory obligation to allocate response costs between "liable parties," it must first determine which parties have CERCLA liability in this case. *See, e.g., Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 653 (6th Cir. 2000) ("… liability under § 113 is not joint and several, but several only…the provision grants the district court discretion to allocate response costs among liable parties."). As the Eighth Circuit has noted:

> "We begin our discussion, as we must, with the language of the statute. ***Recovery of response costs by a private party under CERCLA is a two-step process***…Once liability is established, the focus shifts to allocation…Allocation is a contribution claim controlled by 42 U.S.C. § 9613(f)…In resolving contribution claims, the court may allocate response costs ***among liable parties*** using such equitable factors as the court determines are appropriate…."

*Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 934-35 (8th Cir. 1995) (emphasis added).

**2.      Continental's proposed schedule cannot be reconciled with the claims it asserts against Lafarge in its *Second Amended Complaint*.**

In its *Second Amended Complaint*, Continental asserts multiple causes of action against Linwood, Carmeuse, and AMSCO based upon allegations that they have caused the groundwater contamination at issue in this case. In stark contrast to Continental's allegations against those defendants, Continental's CERCLA and contract causes of action against Lafarge are "contingent" claims because they are dependent upon this Court's determination that the CKD landfill is causing the groundwater contamination at issue in this litigation and/or that Continental is liable for such contamination. *See, e.g.*, the following excerpts from Continental's *Second Amended Complaint*:

- "***In the event the CKD landfill is responsible for contributing to the groundwater contamination at issue in this lawsuit, as alleged by Linwood, Carmeuse, and AMSCO, which Plaintiff denies***, Lafarge (n/k/a Holcim) is a covered person as defined by Sections 107(a)(2) and 101(20)(A) of CERCLA, 42 U.S.C. §§ 9607(a)(2), 9601(20)(A), because it owned and operated Plaintiff's landfill at the time of disposal of a hazardous substance." (*Second Amended Complaint* at ¶ 8).

- "***Linwood, Carmeuse, and AMSCO allege that Continental's CKD landfill is responsible for the groundwater contamination at issue in this litigation. Continental denies these allegations; however, should the Court find Plaintiff liable***, any such contamination was caused by Lafarge, not Plaintiff." (*Second Amended Complaint* at ¶ 58).

- "Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), ***if the CKD landfill is responsible for any of the groundwater contamination, as alleged by Linwood, Carmeuse, and AMSCO, which Plaintiff denies,*** Lafarge is jointly and severally liable to Plaintiff, in whole or in part, for any necessary costs to investigate, monitor, and/or otherwise respond to groundwater contamination that Plaintiff has incurred or will incur in the future." (*Second Amended Complaint* at ¶ 92 (COUNT II – COST RECOVERY UNDER CERCLA, 42 U.S.C. § 9607(a) (against Lafarge)).

- "***In the event the CKD landfill is responsible for any of the groundwater contamination at issue, as alleged by Linwood, Carmeuse, and AMSCO but which Plaintiff denies***, Plaintiff asks the Court for a judicial declaration that Lafarge is jointly and severally liable for all investigation costs incurred, investigation costs to be incurred, and response costs to be incurred in connection with groundwater contamination at Plaintiff's property consistent with the National Contingency Plan, such judgment to be binding on any subsequent action or actions to recover further response costs or damages." (*Second Amended Complaint* at ¶ 101 (COUNT IV – DECLARATORY JUDGMENT UNDER FEDERAL LAW AS TO LAFARGE'S RESPONSIBILITY FOR PAST AND FUTURE CERCLA RESPONSE COSTS (against Lafarge))).

4915-4396-4068.2

- *"**If the CKD landfill is responsible for any groundwater contamination, as alleged by Linwood, Carmeuse, and AMSCO but <u>which Plaintiff denies</u>**, then (1) that contamination is due to Lafarge's acts and omissions, and Lafarge would be responsible for the same as part of its "Retained Liabilities," and (2) Continental has incurred expenses and suffered damages arising out of or in connection with the "Retained Liabilities," including expenses to investigate the cause of the groundwater contamination and develop a remedial action at the direction of the IDNR, and expenses to defend the counterclaims asserted by Linwood, Carmeuse, and AMSCO."* (*Second Amended Complaint* at ¶ 168 (COUNT XI – BREACH OF CONTRACT (against Lafarge))).

In sum, all of Continental's claims against Lafarge rest upon a contingent, "if – then" theory of liability. One of the key issues to be decided in this case is whether the CKD landfill is the source of any contamination beneath Continental's property. Linwood, Carmeuse, and AMSCO allege the CKD landfill is causing the groundwater contamination beneath Continental's property and, as demonstrated above, Continental expressly and repeatedly denies the CKD landfill is causing groundwater contamination. Each cause of action asserted by Continental against Lafarge is contingent on this Court finding that the CKD landfill is causing groundwater contamination beneath Continental's property. *If* the other defendants can make their case, *then* Continental's claims against Lafarge spring to life.

Continental's proposed schedule cannot be reconciled with its contingent claims against Lafarge. Continental has not explained how the parties can be expected to develop expert opinions and proposals for allocating CERCLA liability before any liability is determined to exist, and Continental has not explained how it could resolve the tension inherent to a schedule that would allocate liability potentially associated with the CKD landfill while its operative pleading in this case expressly, and repeatedly, denies the CKD landfill is the cause of any contamination in this case. *See* Section C.2, *supra*. Defendants' proposed schedule avoids this irreconcilable conflict and allows the parties to first make their technical cases with regard to liability, followed by the development of expert allocation opinions based upon that record and the Court's rulings.

10

4915-4396-4068.2

**3.     CERCLA prohibits "double recovery" of response costs and Defendants' proposed schedule provides the structure for preventing this impermissible outcome.**

Continental is asserting state common law claims of trespass, nuisance, injunctive relief, negligence, negligence per se against Linwood, Carmeuse, and AMSCO and Continental is asserting breach of contract claims against Linwood and Lafarge. *See Second Amended Complaint* at Counts V – XII. If Continental is successful in prosecuting any of these claims and judgment is entered in its favor, a corresponding award of damages is likely. Because any damages award would likely represent compensation for costs Continental was found to have incurred as a result of the alleged groundwater contamination at issue in this case, this potential result must come *before* any allocation proceedings by this Court to ensure the allocation does not result in "double recovery" prohibited by CERCLA.

Under CERCLA, "[a]ny person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law **shall** be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter." 42 U.S.C. § 9614(b) (emphasis added). Courts recognize CERCLA's prohibitions against double recovery and consider prior reimbursements to be a necessary component of any equitable allocation in CERCLA proceedings. *See, e.g., Boeing Co. v. Cascade Corp.,* 207 F.3d 1177, 1189 (9th Cir.2000) ("[O]ne equitable factor is preventing someone from recovering for the same harm twice."); *Vine Street, LLC v. Keeling,* 460 F.Supp.2d 728, 765-66 (E.D. Tex. 2006) ("[E]quity prohibits a CERCLA claimant from being reimbursed more than once for the same response costs."), reversed and vacated on other grounds in *Vine Street LLC v. Borg Warner Corp.,* 776 F.3d 312 (5th Cir. 2015); *and Friedland v. Tic-The Industrial Co.,* 566 F.3d 1203, 1207 (10th Cir. 2009), *citing* 42 U.S.C. § 9613(f)(1) (permitting a CERCLA contribution-action plaintiff to recoup "more

than the response costs he paid out of pocket flies in the face of CERCLA's mandate to apportion those costs equitably among liable parties.").

In *K.C. 1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007), the Eighth Circuit similarly recognized CERCLA's prohibition against double recovery when performing an equitable allocation under Section 113:

> In resolving contribution claims in general, CERCLA directs the court to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." *Id.* § 9613(f)(1). In determining which equitable factors are appropriate, the policies articulated in CERCLA cannot be ignored. Importantly, CERCLA articulates a policy against double recovery. *See* 42 U.S.C. § 9614(b) (prohibiting duplicate recovery for the same removal costs).

*Id*. at 1018 (vacating the district court's monetary judgment and remanding the case for the district court to consider potential offsets to the judgment).

If this Court finds two or more parties in this case have CERCLA liability, the Court will be required to conduct an equitable allocation in accordance with CERCLA Section 113. The express language of the statute, and the case authority cited above – including controlling authority from the Eighth Circuit – require the Court to prevent double recovery of response costs by including separate recoveries as a factor in its equitable allocation. Unlike Continental's proposal, Defendants' proposed schedule sequences allocation expert disclosures after the Court enters judgment on each party's respective liability, if any. By allowing the allocation experts and allocation proceedings to follow liability determinations, the Court will be able to perform its statutory obligation of preventing double recovery because only then, will the Court be able to determine whether and to what extent Continental's CERCLA recovery must be reduced to account for the separate recoveries under different theories of liability.

12

**4.    Continental's proposed schedule does not allow the parties to develop the record necessary for this Court to conduct the equitable allocation required by CERCLA.**

*a.    CERCLA allocation requires findings of causation and harm.*

"[I]n order to prove liability, a plaintiff must show that a defendant is within one of the four classes of covered persons enumerated in subsections (1) through (4); that a release or threatened release from a facility has occurred; that the plaintiff incurred response costs as a result; and that the costs were necessary and consistent with the national contingency plan." *Control Data Corp.*, 53 F.3d at 934. For purposes of liability, the court's focus is whether the defendant's release or threatened release of hazardous substances caused harm to the plaintiff in the form of response costs. *Id*. at 935. However, for purposes of allocating liability, the focus is on whether defendant caused actual harm to the environment. *Id*. "Courts have considered various factors in resolving contribution claims but the 'Gore factors'…are the most widely used." *Id*. The Gore factors are:

1.    The ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished;

2.    The amount of hazardous waste involved;

3.    The degree of toxicity of the hazardous waste;

4.    The degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;

5.    The degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and

6.    The degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment. *Id*.

The record on these issues will not exist until the Court resolves liability issues associated with the pending claims running between all parties. For example, the parties dispute whether and to what extent any releases of hazardous substances have occurred at the site; whether any party's

13

actions have caused or contributed to any such releases; whether any releases of hazardous substances proven to exist may be distinguished; etc.

### b. CERCLA allocation requires consideration of contractual obligations related to pollution claims.

Continental and Lafarge have asserted breach of contract claims against each other arising from the 2015 Asset Purchase Agreement ("2015 APA") through which Lafarge transferred ownership of the Continental Property and related business operations to Continental. Under the 2015 APA, Continental agreed to be responsible for certain "Assumed Liabilities" and Lafarge agreed to be responsible for certain "Retained Liabilities." If the Court determines that Lafarge or Continental is in breach of its contractual obligations to the other party and enters judgment, with a corresponding award of damages, those damages must be included in the Court's equitable allocation to prevent any double recovery and to fulfill CERCLA's policy of equitably allocating response costs. *See, e.g., Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 326 (7th Cir. 1994):

> In allocating response costs among the liable parties, a court should employ such equitable factors as it determines are appropriate. Factors which may be considered include the relative fault of the parties, relevant "Gore factors," and any contracts between the parties bearing on the allocation of cleanup costs. Since the district court did not believe the indemnification agreement applied to the cleanup costs at issue, the court ignored the agreement when allocating responsibility for cleanup costs. This was an error. Although contractual arrangements between parties are not necessarily determinative of all statutory liability, [Defendant's] intent to indemnify [Plaintiff] should be considered in the allocation of cleanup costs. In determining the relative contribution of the parties, courts must look to the "totality of the circumstances." (internal citations omitted)

Therefore, the Court should adopt Defendants' proposed schedule because it will allow the Court to first determine whether any of Continental's claimed response costs are "Assumed Liabilities' or "Retained Liabilities" under the 2015 APA, and then factor that contractual indemnity obligation into the Court's equitable allocation of CERCLA response costs. *See id.*

14

**5.     The Court should adopt Defendants' proposed amended pretrial schedule.**

Consistent with the requirements of CERCLA § 113 and authority from this Circuit, Defendants propose the following schedule for sequencing expert disclosures and recognizing that Continental's attempt to recover response costs from Defendants is necessarily a "two-step process." *Control Data Corp.*, 53 F.3d at 934-35.

| Event/Activity | Current Deadline (Dkt. No. 143) | Event/Activity | Defendants' Proposed Deadline |
|---|---|---|---|
| Fact Discovery Completed | June 29, 2026 | Fact Discovery Completed | December 31, 2026 |
| | | Parties disclose general subject matter of expert reports. | February 15, 2027 |
| Continental discloses expert reports | October 30, 2026 | Continental's expert reports in support of all claims against all Defendants regarding liability | March 1, 2027 |
| Linwood Defendants and Lafarge complete depositions of Continental's experts | December 18, 2026 | Defendants' expert reports in response to Continental's March 1, 2027 Expert Reports and Linwood Defendants' expert reports against Lafarge and Lafarge's expert reports against Linwood Defendants regarding liability | June 1, 2027 (90 days) |
| | | Continental's expert rebuttal reports in response to Defendants' June 1, 2027 Response Reports | August 1, 2027 (60 days after June 1 reports) |
| Linwood Defendants and Lafarge disclose expert reports | February 12, 2027 | Linwood Defendants' and Lafarge's reports in response to reports covering "Defendant-Defendant" claims | September 1, 2027 (90 days after June 1 reports) |

15

| Event/Activity | Current Deadline (Dkt. No. 143) | Event/Activity | Defendants' Proposed Deadline |
|---|---|---|---|
| Depositions of Linwood and Lafarge experts completed | April 2, 2027 | Linwood Defendants' and Lafarge's expert rebuttal reports in response to September 1, 2027 reports | Nov. 1, 2027 (60 days) |
| Continental and Lafarge disclose expert rebuttal reports | May 7, 2027 | Liability expert depositions begin | Nov. 1, 2027 |
| Depositions of Continental and Lafarge rebuttal experts completed | June 18, 2027 | Depositions of all liability experts completed | March 1, 2028 (4 months of depositions) |
|  |  | Linwood Defendants' and Lafarge's expert rebuttal reports in response to September 1, 2027 reports | March 31, 2028 |
|  |  | Trial and/or summary judgment on liability. |  |
| Linwood Defendants disclose expert rebuttal reports | July 23, 2027 | All parties disclose allocation expert reports | 60 days after Court issues Order determining liability issues |
| Depositions of Linwood Defendants rebuttal experts completed | September 3, 2027 | All parties disclose responses to opening allocation expert reports. | 60 days after disclosure of opening allocation expert reports |
| Lafarge disclosure of rebuttal reports for claims/defenses against Linwood Defendants | October 8, 2027 | Depositions of allocation experts completed | 60 days after disclosure of expert allocation response reports |
|  |  |  |  |
| Depositions of these experts completed | November 19, 2027 |  |  |

4915-4396-4068.2

| Event/Activity | Current Deadline (Dkt. No. 143) | Event/Activity | Defendants' Proposed Deadline |
|---|---|---|---|
| Expert Discovery Completed | November 19, 2027 | | |
| Deadline for Dispositive Motions | March 31, 2028 | | |

Defendants' position on the sequencing of expert disclosures is consistent with CERCLA's directive on how CERCLA allocation must be performed by courts. Defendants agree that fact discovery related to liability and allocation issues can proceed at the same time. However, Defendants seek to bifurcate liability and allocation determinations (which necessitates the sequencing of expert liability disclosures and expert allocation disclosures) and this is consistent with the fact that "Courts 'generally bifurcate a CERCLA proceeding, determining liability in Phase I, and then apportioning recovery in Phase II.'" *Cooper Crouse-Hinds, LLC v. City of Syracuse, New York*, 568 F.Supp.3d 205, 224 (N.D.N.Y. 2021), *citing Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 131 (2d Cir. 2010); *accord* Manual for Complex Litigation §§ 34.12, 34.21 (4th Ed. 2017) (describing the three typical and interrelated phases of CERCLA litigation as (1) liability; (2) determination of remedy and recoverable costs; and (3) equitable allocation of response costs).

Because the parties' expert reports on allocation will be offered to assist this court's equitable allocation of response costs, it makes no sense for the allocation experts to issue expert reports on how response costs should be allocated "among liable parties" before the court has determined who those parties are. *See* 42 U.S.C. § 9613(f)(1).

**D.      A scheduling conference and/or a hearing on Plaintiff's *Motion* will allow the parties to more fully inform the Court of the need to modify the existing schedule.**

All CERCLA cases are inherently complex. This case presents even more complexities because it involves multiple parties and, in addition to the CERCLA claims running between all parties, it involves related claims for breach of contract and state law claims of trespass, nuisance, negligence, and negligence per se. As explained above, the pleadings in this case were only finalized a few weeks ago and the parties now find themselves at a crossroads: agreeing that a revised pretrial schedule is necessary to accommodate the needs of this case but, disagreeing as to how that revised pretrial schedule should take shape.  Given these complexities, and the benefits inherent to conversations that would take place during a hearing on Plaintiff's *Motion* or a new scheduling conference, Lafarge respectfully submits that setting one or both of these proceedings would serve the ends of justice by allowing the parties to more fully inform the Court of the need to modify the existing schedule.

## V.      CONCLUSION

For the reasons set forth above, Lafarge respectfully submits that good cause exists to amend the current pretrial schedule and requests that the Court enter the proposed schedule set forth above. In conformance with LR 7(c), Lafarge respectfully requests oral argument on Plaintiff's *Motion*.  Good cause exists for oral argument because the issues raised on the parties' filings are complicated, and oral argument will allow the parties an opportunity to more fully inform the Court of their respective positions on such matters and respond to any questions the Court may have as it considers these issues.

18

4915-4396-4068.2

Dated this 22nd day of April 2026.

Respectfully submitted,

LAFARGE NORTH AMERICA INC.

By  */s/* Matthew M. Enenbach
    Matthew M. Enenbach, AT0012613
    Kutak Rock LLP
    1650 Farnam Street
    Omaha, NE 68102-2103
    Phone: (402) 346-6000
    Facsimile: (402) 346-1148
    Matthew.Enenbach@KutakRock.com

    Marcus P. Zelzer, AT0014571
    Kutak Rock LLP
    60 South Sixth Street, Suite 3400
    Minneapolis, MN 55402-4018
    Phone: (612) 334-5000
    Facsimile: (612) 334-5050
    Marcus.Zelzer@KutakRock.com

    Paula Jantzen, admitted *pro hac vice*
    Stephen Jantzen, admitted *pro hac vice*
    Laura Finley, admitted *pro hac vice*
    Grant Lucky, admitted *pro hac vice*
    Ryan Whaley PLLP
    400 N. Walnut Avenue
    Oklahoma City, OK  73104
    Phone:  (405) 239-6040
    Facsimile:  (405) 239-6766
    pjantzen@ryanwhaley.com
    sjantzen@ryanwhaley.com
    lfinley@ryanwhaley.com
    glucky@ryanwhaley.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026, a true and correct copy of the foregoing was filed electronically to the Clerk of Court via the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Matthew M. Enenbach*
Matthew M. Enenbach

19

4915-4396-4068.2