**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| CONTINENTAL CEMENT COMPANY, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> LINWOOD MINING AND MINERALS CORP., CARMEUSE MIDWEST, LLC, AMSCO, INC., and LAFARGE NORTH AMERICA INC., <br><br> Defendants. | Case No. 3:24-CV-00015-RGE-HCA <br><br><br><br> **JULY 24, 2026** <br> **JOINT STATUS REPORT** |

Pursuant to the Court's Text Order dated June 18, 2026 (ECF No. 180), Plaintiff Continental Cement Company, L.L.C. ("Plaintiff"), Defendants Linwood Mining and Minerals Corp. ("Linwood"), Carmeuse Midwest, LLC ("Carmeuse"), and AMSCO, Inc. ("AMSCO") (together, the "Linwood Defendants"), and Defendant Lafarge North America Inc. ("Lafarge") (collectively, the "Parties") submit the following Joint Status Report addressing the logistics and legal issues regarding the Phase 1 trial, which, in accordance with the Court's May 26, 2026, Order Granting in Part Plaintiff's Motion to Amend the Scheduling Order (ECF No. 177 at 5), will resolve the common law claims and CERCLA liability. The Phase 2 trial will be a bench trial on CERCLA allocation only. (*Id*. at 5-6).

## I.    Background

In its Text Order dated June 18, 2026, the Court ordered the Parties to confer and file a status report regarding the logistics and legal issues that need to be discussed regarding the Phase

1 trial, outlining the Parties' proposals and/or divergent positions on the matter. The Parties held meet and confer conversations pursuant to that Order on July 10, 2026 and July 23, 2026. The Parties agree generally on a bifurcated Phase 1 trial that would begin with a Phase 1A bench trial on CERCLA liability. The Parties have not yet reached an agreement on a few finer points, including (1) whether they envision a break following Phase 1A to allow the Parties to brief Findings of Fact and Conclusions of Law from the Phase 1A bench trial and for the Court to enter an Order resolving CERCLA liability; and (2) where in the larger trial sequencing structure the contract claims between Continental and Lafarge should be tried before the Court (i.e., should they be bench tried as Part of Phase 1B, as Continental proposes, or immediately after the CERCLA bench trial, as Lafarge and the Linwood Defendants propose).

The Parties will continue to meet and confer in good faith on the trial setting issue before the August 19, 2026 Status Conference in which this topic will be discussed. The Parties each submit the following statements in support of the agreed bifurcated trial structure.

### a. Claims to be Jury Tried versus Bench Tried

As set forth in the Parties' June 16, 2026, Joint Status Report (ECF No. 179), the Parties have already agreed on and laid out the breakdown between jury-tried and bench-tried claims in this matter, and that breakdown remains unchanged.

## II. Continental's Arguments in Support of the Parties' Agreed Bifurcated Trial Structure

The Parties agree that the Court should bifurcate the first trial in this matter into phases pursuant to Fed. R. Civ. P. 42(b). Continental proposes a **Phase 1A bench trial in which all Parties will try their respective CERCLA liability claims, defenses, and counterclaims to the bench, including Continental's declaratory judgment claims under CERCLA (Counts I-IV)**, followed by a break in time for briefing on Proposed Findings of Fact and Conclusions of Law and

the Court's entry of its Order resolving Counts I-IV and the CERCLA counterclaims against Continental. After the Court issues its rulings on CERCLA liability, Continental proposes a **<u>Phase 1B mixed trial</u> on the remaining claims, which would include a jury trial on the tort and contract claims against the Linwood Defendants (Counts V, VI, VIII–X), a bench trial on the equitable claims against the Linwood Defendants (Count VII for injunctive relief), and a bench trial on the breach of contract and declaratory judgment claims between Continental and Lafarge under the 2015 Asset Purchase Agreement (Counts XI-XII)**. The sequencing of the Phase 1B trial can be determined later, and it is Continental's position that any potential jury confusion issues could be mitigated.

Resolving the CERCLA counterclaims against Continental in Phase 1A, together with Continental's CERCLA claims, will allow those counterclaims to be adjudicated initially and in an efficient manner, alongside the other CERCLA cost recovery and declaratory judgment claims. CERCLA is the threshold issue in this case across all claims asserted by every party, and rulings on liability will inform subsequent proceedings. Continental's proposed structure is supported by the weight of authority in CERCLA cases involving mixed legal and equitable claims, and the specific circumstances of this case make bifurcation particularly appropriate. Courts "generally bifurcate a CERCLA proceeding, determining liability in Phase I, and then apportioning recovery in Phase II." *Cooper Crouse-Hinds, LLC v. City of Syracuse, New York*, 568 F. Supp. 3d 205, 224 (N.D.N.Y. 2021) (citing *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 131 (2d Cir. 2010)). Under Fed. R. Civ. P. 42(b), the Court has the authority to bifurcate trial issues "[f]or convenience, to avoid prejudice, or to expedite and economize" proceedings. *Linden v. CNH Am. LLC*, No. 3:09-CV-00019-JEG, 2011 WL 13165200, at *1 (S.D. Iowa Mar. 4, 2011). In deciding whether to bifurcate, courts "should consider the preservation of constitutional rights,

clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *Id.* (citations omitted). Bifurcation is "especially appropriate" where "resolution of a single issue—namely, [a party's] liability—could dispose of the entire case." *United States v. Boeing Co.*, No. C22-0485JLR, 2023 WL 5836487, at *2–3 (W.D. Wash. Aug. 31, 2023); *see also Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1059 n.3 (C.D. Cal. 2003); *United States v. Sterling Centrecorp Inc.*, No. 2:08-CV-02556-MCE-JFM, 2009 WL 453864 (E.D. Cal. Feb. 9, 2009) (joint motion to bifurcate CERCLA discovery and trial into liability and cost recovery phases granted).

A combined trial of the CERCLA and contract issues in this case would be unmanageable and, as to Continental's contract claims against Linwood, would risk confusing the jury. In *Alcoa, Inc. v. Alcan Rolled Products-Ravenswood LLC*, No. CV 06-451-JFB-SRF, 2020 WL 1180713 (D. Del. Mar. 11, 2020), the court confronted facts closely analogous to those here (CERCLA liability claims intermingled with contractual indemnification disputes) and ordered bifurcation on its own motion. The court found that "[a] trial that includes evidence for the court concerning CERCLA issues and evidence for a jury concerning questions of fact relating to indemnification contract would be unmanageable" and that "[t]he jury would undoubtedly be confused by all the arguments, counterarguments, and supporting evidence intertwined between CERCLA and contract liability." *Id.* at *1. On reconsideration, the *Alcoa* court reaffirmed bifurcation, finding "no overlapping factual issues between the CERCLA claims and the contract claims that would preclude bifurcation" because "[t]he Court and the jury will resolve distinct questions." *Id.* at *4. That reasoning applies with full force here. The Parties' respective CERCLA claims require proof of distinct statutory elements—covered persons, facility, release or threatened release, and necessary response costs consistent with the National Contingency Plan ("NCP")—that are

4

entirely separate from the duty-breach-causation-damages framework governing Continental's state law tort claims and the contractual interpretation questions involved in the breach of contract claims.

Moreover, resolving CERCLA liability first would significantly streamline the proceedings and conserve the resources of the Parties and the Court. In *Torres v. Igdaloff*, No. 2:17-cv-04059-MCS-JEM, 2021 WL 4527748 (C.D. Cal. July 19, 2021), the court ordered bifurcation in a multi-party case involving CERCLA, tort, and contract claims—a posture virtually identical to this case. The court found that "[b]ifurcating trial would significantly streamline both proceedings by reducing the number and type of competing claims at each proceeding" and that "[t]rying the CERCLA and HSAA claims at the same time as the tort and contract claims would waste the jury's time when the parties present evidence pertaining solely to the statutory claims, and would carry a high risk of confusing the jury, especially as to the measure of damages." *Id.* at \*2. Critically, the *Torres* court found "persuasive … [the] argument that, given the magnitude of the costs to be allocated under the statutory claims relative to the potential recovery for the tort and contract claims, adjudicating the CERCLA and HSAA claims first may render a jury trial on the remaining claims unnecessary or facilitate a settlement of the remaining claims." *Id.* The same logic applies here. The investigation, monitoring, and remediation costs mandated by Iowa Department of Natural Resources are the primary financial driver of this case. Resolving the CERCLA claims and counterclaims and the declaratory judgment claims in Phase 1A will provide a framework that narrows the issues and could facilitate resolution of some of the remaining claims that would be tried in Phase 1B, namely the common law tort claims.

Additionally, a successful showing of liability in Phase 1A would trigger mandatory declaratory relief under 42 U.S.C. § 9613(g)(2), which provides that such judgment shall be

"binding on any subsequent action or actions to recover further response costs or damages." *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 586 (9th Cir. 2018) (interpreting § 9613(g)(2) as requiring courts to grant declaratory judgment upon a successful showing of liability).

Continental acknowledges that there is factual overlap between the CERCLA and state law claims, as both sets of claims arise from the same underlying contamination at issue in this case. However, factual overlap alone does not defeat bifurcation. As the *Alcoa* court explained, "[t]hough the CERCLA claims and breach of contract/indemnification claims involve the same factual setting, the claims are not interwoven to the point that factfinding is required on an element common to both claims." 2020 WL 1180713, at *4. Likewise, another District Court recognized that "[e]vidence will overlap because the evidence necessary to establish one element of a cause of action may be nearly identical to the evidence necessary to establish an element for a different cause of action," but nonetheless ordered a trifurcated trial because "the same trial judge will be presiding over" all phases and "the evidence would not need to be presented again." *In re Gold King Mine Release in San Juan Cnty., Colorado on Aug. 5, 2015*, No. 1:18-MD-02824-WJ, 2019 WL 4297231, at *3 (D.N.M. Sept. 11, 2019), *report and recommendation adopted*, 2019 WL 8223581 (D.N.M. Oct. 15, 2019). Here, the CERCLA claims require proof of specific statutory elements—covered persons under § 9607(a), facility as defined by § 9601(9), release or threatened release under § 9601(22), and response costs conforming to the NCP—that are separate and distinct from the duty-breach-causation-damages framework governing the tort claims and the contractual interpretation required for the breach of contract claims. The Court can resolve the CERCLA questions first without prejudging any factual issues material to the jury's determination of the tort and contract claims.

While Continental does not dispute that the Continental-Lafarge Asset Purchase Agreement must be bench tried, Continental opposes scheduling that portion of the bench trial immediately after the Phase 1A bench trial on CERCLA liability. Continental's direct claim for CERCLA cost recovery against Lafarge is legally separate from its contractual claims under the Asset Purchase Agreement. Placing the Asset Purchase Agreement contract claims in Phase 1B, rather than immediately following the bench trial on CERCLA liability, will help the Court and the Parties understand and delineate the scope of the damages recoverable under CERCLA as distinct from damages recoverable under the Asset Purchase Agreement. Moreover, trying the Asset Purchase Agreement contract claims in Phase 1B, informed by the Phase 1A CERCLA liability findings, could allow Continental and Lafarge to avoid a separate bench trial on their contract claims altogether to the extent the Phase 1A findings resolve a key factual predicate underlying Counts XI-XII, namely whether the CKD landfill contributed to the contamination.

For these reasons, Continental respectfully requests that the Court adopt the agreed trial structure, exercising its discretion under Rule 42(b) to order a bifurcated trial, with Phase 1A addressing CERCLA liability, the related CERCLA declaratory judgment claims (Counts I–IV) and Defendants' CERCLA counterclaims against Continental in a bench trial, followed by a break for resolution of those issues, and then a Phase 1B trial on the remaining tort, contract, and equitable claims.

Continental will continue to meet and confer with the Linwood Defendants and Lafarge concerning the two issues where the Parties' do not agree—whether to pause between Phases 1A and 1B and in which Phase the Continental-Lafarge Asset Purchase Agreement claims should be tried—and will update the Court as needed before the August 19 Status Conference.

### III. The Linwood Defendants' and Lafarge's Arguments in Support of the Parties' Agreed Bifurcated Trial Structure

As Continental stated, the Parties agree on a number of points:

*First*, Rule 42(b) provides district courts broad discretion to bifurcate, or even trifurcate, trial of an action involving CERCLA claims to meet the circumstances of the case presented. *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201–1202 (8th Cir. 1990) ("District courts possess broad discretion to bifurcate issues for purposes of trial under Fed. R. Civ. P. 42(b)."); *New York v. Kasper*, CV-07-0541 (SJF)(ETB), 2009 WL 10702947, at *6 (E.D.N.Y. Oct. 22, 2009) (explaining Rule 42(b) provides broad discretion to bifurcate or trifurcate trial in CERCLA cases to meet the circumstances of each case).

*Second*, when deciding whether to bifurcate or trifurcate trial, "district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *Nsheiwat v. Walmart, Inc.*, 2025 WL 823259, at *4 (S.D. Iowa Feb. 13, 2025) (quoting *O'Dell*, 904 F.2d at 1202).

*Third*, taking into consideration the preservation of constitutional rights—including the Seventh Amendment right to a jury trial—clarity, judicial economy, and the likelihood of confusion and inconsistent results, the Parties' respective CERCLA claims and Continental's common law tort and breach-of-contract claims should be tried separately. *See Supra* Section II. (proposing bifurcating trial into Phase IA and Phase IB).

From here, however, the Parties' positions on how to proceed at trial Phase I slightly diverge. Where Continental proposes trying the Parties' respective CERCLA liability claims to the bench (Phase IA) and then trying *all* of Continental's common law tort and breach-of-contract claims to a jury with equitable issues being submitted to the bench (Phase IB), the Linwood Defendants and Lafarge propose the same process except that the common law breach-of-contract

claims between Continental and Lafarge would be separately tried to the bench immediately following the Phase IA trial of the Parties' CERCLA liability claims. That is, the Linwood Defendants and Lafarge propose the following progression:

Phase IA:    all Parties try their CERCLA liability claims, defenses, and counterclaims to the bench;

Phase IB:    Continental and Lafarge try their common law breach-of-contract claims against each other to the bench; and

Phase IC:    Continental tries its common law tort and breach-of-contract claims against the Linwood Defendants to a jury, with equitable issues submitted to the bench.

The primary reason for this proposal is that Continental and Lafarge waived their right to a jury trial on their breach-of-contract claims against each other. Specifically, in Section 10.08 of the 2015 Asset Purchase Agreement that facilitated the sale and transfer of the Davenport facility from Lafarge to Continental, Continental and Lafarge "irrevocably and unconditionally waive[d], to the fullest extent permitted by applicable law, any right that they may have to trial by jury of any claim or cause of action or in any proceeding, directly or indirectly based upon or arising out of" their Agreement. *See* ECF 106-1 * SEALED * at 107.

In terms of logistics and practical matters, the bench trial of the breach-of-contract claims between Continental and Lafarge could begin immediately after the bench trial on CERCLA liability ends. Lafarge respectfully submits that sequencing the bench trial in this manner will serve the interests of judicial economy and efficiency because many of the essential components of the CERCLA bench trial (*e.g.*, Court resources, counsel, any many witnesses) would simply transition their focus from CERCLA liability to the breach-of-contract claims between Continental and Lafarge.

This sequencing of the Phase I trial will also avoid the potential prejudice and confusion that may result if all of the Parties' common law claims were litigated in a single proceeding. For example, when a party has a right to a jury trial on an issue involved in a legal claim, the Court is bound by the jury's determination of that issue as it affects the Court's later disposition of an accompanying equitable claim. *See, e.g.*, *Goodgame v. Am. Cast Iron Pipe Co.*, 75 F.3d 1516, 1520 (11th Cir. 1996) (a court "cannot disregard a jury's verdict and substitute its own findings in deciding claims; otherwise, the court could effectively subsume the jury's function and deprive litigants of their right to trial by jury."); *accord Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959); Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.").

By sequencing the bench trial of Continental's and Lafarge's breach-of-contract claims before the later jury trial, this will (a) avoid the risk of jury confusion from hearing evidence that is not relevant to the claims it will decide, (b) facilitate the development of clear, separate trial records should any appeal become necessary, and (c) avoid the risk of prejudice to Lafarge if the jury were to determine a factual issue that could limit the Court's ability to independently act as a fact finder for purposes of deciding the breach-of-contract claims between Lafarge and Continental.

In light of that, the Linwood Defendants and Lafarge contend that these claims should be separately tried to the bench immediately following the trial of the Parties' CERCLA liability claims. *See O'Dell*, 904 F.2d at 1202 (stating district courts should consider constitutional rights— which includes the Seventh Amendment right to a jury—clarity, judicial economy, and the

likelihood of inconsistent results or confusion). This progression will maintain efficiency and clarity while simultaneously protecting against possible inconsistencies and confusion. The breach-of-contract claims between Continental and Lafarge must be tried to the bench, making it appropriate to try these claims in proximity to the bench trial of the Parties' CERCLA claims. Also, these claims do not affect the Linwood Defendants. Meanwhile, Continental's common law claims that will be tried to a jury do not affect Lafarge. So it is appropriate to separately try Continental's breach-of-contract claims against Lafarge—trying them together with Continental's common law claims against the Linwood Defendants risks both confusion and inconsistencies that can easily be avoided under the Linwood Defendants' and Lafarge's proposal.

The Linwood Defendants and Lafarge therefore propose trifurcating Phase I of trial in the following way:

Phase IA:    all Parties try their CERCLA liability claims, defenses, and counterclaims to the bench;

Phase IB:    Continental and Lafarge try their common law breach-of-contract claims against each other to the bench; and

Phase IC:    Continental tries its common law tort and breach-of-contract claims against the Linwood Defendants to a jury, with equitable issues submitted to the bench.

The Parties have met and conferred several times to reach alignment on these issues, and the Linwood Defendants and Lafarge believe substantial progress has been made. The Linwood Defendants and Lafarge understand that the Parties intend to continue meeting and conferring about trial related issues even after the submission of this Report for the purpose of achieving further clarity and, hopefully, achieving further alignment on these issues. In the event the Parties reach agreement on additional matters affecting trial, the Linwood Defendants and Lafarge will make the appropriate filings to keep the Court apprised of these issues.

Dated: July 24, 2026

**FOR PLAINTIFF:**

*/s/ Sarah L. Struby*

Stephen E. Schemenauer IA# AT0014404
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
steve.schemenauer@stinson.com

Sarah L. Struby, admitted *pro hac vice*
STINSON LLP
230 W. McCarty Street
Jefferson City, MO 65101
Telephone: (573) 636-6263
Fax: (573) 636-6231
sarah.struby@stinson.com

Betsy C. Moedritzer, admitted *pro hac vice*
STINSON LLP
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 412-9307
betsy.moedritzer@stinson.com

**FOR THE LINWOOD DEFENDANTS:**

*/s/ Nicholas F. Miller*

Matthew S. Brick (AT0001081)
Erin M. Clanton (AT0002592)
Nicholas F. Miller (AT0015361)
BRICK GENTRY, P.C.
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
Phone: 515-446-3441
Fax: 515-274-1488
matt.brick@brickgentrylaw.com
erin.clanton@brickgentrylaw.com
nick.miller@brickgentrylaw.com

**FOR LAFARGE:**

*/s/ Paula Jantzen*

Matthew M. Enenbach, AT0012613
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102-2103
Phone: (402) 346-6000
Facsimile: (402) 346-1148
Matthew.Enenbach@KutakRock.com

Marcus P. Zelzer, AT0014571
Kutak Rock LLP
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402-4018
Phone: (612) 334-5000
Facsimile: (612) 334-5050
Marcus.Zelzer@KutakRock.com

Paula Jantzen, admitted *pro hac vice*
Stephen Jantzen, admitted *pro hac vice*
Laura Finley, admitted *pro hac vice*
Grant Lucky, admitted *pro hac vice*
Ryan Whaley PLLC
400 N. Walnut Avenue
Oklahoma City, OK  73104

Phone: (405) 239-6040
Facsimile: (405) 239-6766
pjantzen@ryanwhaley.com
sjantzen@ryanwhaley.com
lfinley@ryanwhaley.com
glucky@ryanwhaley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2026, a true and correct copy of the foregoing was filed electronically to the Clerk of Court via the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Sarah L. Struby
Sarah L. Struby