**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| CONTINENTAL CEMENT COMPANY, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>LINWOOD MINING AND MINERALS CORP., CARMEUSE MIDWEST, LLC, AMSCO, INCORPORATED, and LAFARGE NORTH AMERICA INC.,<br><br>Defendants. | Case No. 3:24-CV-00015-RGE-HCA<br><br>LAFARGE NORTH AMERICA INC.'S RESPONSE TO THE LINWOOD DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. THE CURRENT SCHEDULE .......... 3

III. STANDARD OF REVIEW .......... 6

IV. ARGUMENT .......... 6

A. Good cause exists to amend the Scheduling Orders .......... 6

1. The technical record is still being developed by Continental, the Linwood Defendants, and the IDNR. .......... 7

2. The technical record and causation evidence is relevant to the CERCLA and contract claims between Continental and Lafarge. .......... 8

3. The technical record and causation evidence is relevant to Continental's common law claims against the Linwood Defendants. .......... 9

4. CERCLA allocation requires findings of causation and harm. .......... 9

B. Lafarge will be prejudiced if the deadline for fact witness depositions is not extended. .......... 11

C. No party will be prejudiced by extending the deadline for fact witness deposition….. 11

D. Events occurring after December 31, 2026 will be relevant to the Court's equitable allocation of CERCLA liability. .......... 12

V. CONCLUSION .......... 13

Defendant Lafarge North America Inc. ("Lafarge") provides the following response to the Linwood Defendants' *Motion to Modify the Scheduling and Trial Setting Order* ("*Motion*") and the associated *Brief in Support*. *See* Dkt. Nos. 203 and 203-1, respectively.

## I. INTRODUCTION

This case is about who caused alleged groundwater contamination beneath Continental Cement Company, L.L.C.'s ("Continental") property, what should be done about it, and how costs of any related investigation and remedy should be allocated. The parties to this case have been diligently working to answer these questions within the framework of this litigation. Importantly, however, the Iowa Department of Natural Resources ("IDNR") is also working to answer these questions as part of its statutory duty to protect the citizens of Iowa and the state's natural resources. The IDNR's work is critical to the issues presented in this case because the IDNR is currently requiring Continental and the Linwood Defendants to investigate groundwater conditions beneath their respective properties so the IDNR can determine what corrective measures, if any, Continental and the Linwood Defendants should be required to take.

This means the parties' groundwater dispute is proceeding on two tracks: one before this Court and another before the IDNR. The Linwood Defendants' *Motion* asks this Court to modify the current schedule in a manner that will allow the parties to recognize the IDNR's work in this case, including the evolving technical and regulatory record being created at the IDNR's direction. Myriad technical issues remain under investigation by the IDNR and, right now, the IDNR is still working to determine things as fundamental as which way groundwater flows between the Continental property and the Linwood property. The IDNR's work is undeniably relevant to the disputed facts in this case, and a schedule that does not provide the parties an opportunity to conduct discovery on such matters creates a risk of prejudice and inconsistent results.

During the parties' meet and confer discussions, all parties agreed that the current December 31, 2026 deadline to complete fact witness depositions should be extended. However, the parties did not agree on what the new deadline should be. Based upon the parties' meet and confer efforts prior to the filing of the Linwood Defendants' *Motion*, Lafarge understands Continental believes the December 31, 2026 deadline for fact witness depositions should be extended by 45 days, with a corresponding 45-day extension of the deadlines for expert witness disclosures identified in the Court's *Order Granting in Part Motion to Amend Scheduling Order* ("*Scheduling Order*"). Dkt. No. 177.

In their *Motion*, the Linwood Defendants seek to extend the deadline for fact witness depositions from December 31, 2026 to December 31, 2027, and they make a corresponding request for the Court enter an Order (1) directing the parties to submit proposed schedules for the remaining case progression and trial dates ("Option 1"), or (b) keeping the existing trial date but, extending the existing deadlines for expert disclosures, expert depositions, and dispositive briefing by two months ("Option 2").

Lafarge agrees the current scheduling orders should be modified to align the current litigation schedule with the evolving technical record being created at the direction of the IDNR which, by all accounts, will extend well beyond the current December 31, 2026 deadline. Further, Lafarge agrees with the Linwood Defendants' request to extend the December 31, 2026 deadline for fact witness depositions, and Lafarge believes "Option 1" and "Option 2" in the Linwood Defendants' *Motion* are each reasonable proposals for modifying the current schedule in a manner supported by the circumstances of this case and the legal authority identified in the Linwood Defendants' *Motion*. Therefore, Lafarge believes there is good cause to grant the relief requested in the Linwood Defendants' *Motion*.

However, for the reasons set forth below, Lafarge believes it would be better to set the fact witness deposition deadline in relation to the existing deadline for the parties to submit their respective expert reports on CERCLA allocation. *See* Dkt. No. 177. Specifically, Lafarge believes there is good cause to set the deadline for fact witness depositions at sixty (60) days before the parties disclose their respective allocation experts. Extending the fact witness deposition deadline in this manner – under either Option 1 or Option 2 in the Linwood Defendants' *Motion* – would allow the parties an opportunity to develop evidence the court needs when it exercises its equitable powers during CERCLA allocation proceedings.

Put simply, modifying the schedule in this manner just makes sense. Regardless of this case, the IDNR will continue to move forward in its investigation and regulatory oversight of groundwater conditions beneath the Continental and Linwood properties. This case should recognize that fact because the information generated as a result of the IDNR's regulatory activities – including currently unknown remedial requirements – are undeniability relevant to the disputed issues in this case. Moreover, there is no reason to shut the door on fact witness testimony regarding the evolving technical record and IDNR activities any time before December 31, 2027 because the CERCLA allocation trial is not reasonably expected to take place until late 2029. *See* Section II, *infra*, and Dkt. Nos. 177, 193, and 201.

## II. THE CURRENT SCHEDULE

The schedule in this matter is controlled by two Orders of the Court: (a) the May 23, 2026 Order Granting in Part Motion to Amend Scheduling Order (Dkt. No. 177) (the "Amended Scheduling Order"), and (b) the September 25, 2026 Text Order Setting Trial and Final Pretrial Conference (Dkt. No. 201) (the "Trial Order") (collectively, the "Scheduling Orders"). Together, these Scheduling Orders contemplate at least three trials:

(1) a July 10, 2028 bench trial on CERCLA liability;[1]

(2) a bench trial and jury trial on all remaining common law and contract claims;[2] and

(3) a bench trial on CERCLA allocation.[3]

To assist the Court's consideration of the Linwood Defendants' *Motion* and Lafarge's responsive arguments herein, Lafarge offers the following demonstrative figure to place the current fact discovery deadline within the temporal context of the trials contemplated under the current Scheduling Orders.

[*intentionally blank space*]

---

1 Dkt. No. 201.

2 *See* Dkt. No. 177, in combination with the Dkt. No. 193 minutes from the August 27, 2026 Status Conference (memorializing the Court's decision to conduct an initial trial on only CERCLA liability, followed by later determination on whether the contract claims between Lafarge and Continental will be tried with the other outstanding claims or in a separate bench trial).

3 Dkt. No. 177 at ECF pp. 4-6.




* This date assumes the 1-2 week bench trial on CERCLA liability will last through July and the Court will then issue Findings of Fact and Conclusions of Law on CERCLA liability within 30 days. Per Dkt. No. 177, Dispositive Motions on all other claims must be filed within 60 days of the Court's ruling on CERCLA liability.

** Per Local Rule, this date is 150 days from the date for filing of dispositive motions on all remaining claims.

*** This date assumes a 2-3 week bench/jury trial during April, followed by jury verdicts and FOFs/COLs on the contract claims and claims for equitable relief within 30 days. Per Dkt. No. 177, Allocation Expert Reports must be disclosed 75 days after the Court's Order on CERCLA liability. However, in light of the Court's decision to conduct a stand-alone trial on CERCLA liability (Dkt. No. 193), this schedule sets the Allocation Report disclosure deadline 75 days after an Order from the trial addressing those remaining claims.

## III. STANDARD OF REVIEW

Fed. R. Civ. P. 16(b)(4) and L.R. 16(f) authorize modification of scheduling orders with the Court's consent, upon a demonstration of good cause. Courts have inherent discretion to manage their dockets, and good cause for extending discovery is frequently found in complex cases with multiple parties who are diligently pursuing discovery and attempting to meet the requirements of the Court's scheduling order. *See, e.g., Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) *and Premcor Refining Group, Inc. v. Apex Oil Company, Inc.*, 2024 WL 3179705 (June 26, 2024 S.D. Ill.) (granting motion to enter a seventh amended scheduling order in a CERCLA case, reflecting a "phased approach" to discovery that separately addressed issues of liability and allocation).

## IV. ARGUMENT

### A. Good cause exists to amend the Scheduling Orders.

Lafarge agrees with the Linwood Defendants' contention that good cause exists to amend the Scheduling Orders. As explained above, Lafarge agrees with the Linwood Defendants' request to extend the December 31, 2026 deadline for fact witness depositions, and Lafarge believes "Option 1" and "Option 2" in the Linwood Defendants' *Motion* are each reasonable proposals for modifying the current schedule in a manner supported by the circumstances of this case and the legal authority identified in the Linwood Defendants' *Motion*. Therefore, Lafarge hereby adopts the legal authorities and arguments set forth in the Linwood Defendants' *Motion*.

However, instead of extending the December 31, 2026 fact witness deposition deadline to December 31, 2027 (as requested by the Linwood Defendants), Lafarge believes it would be better to extend the December 31, 2026 deadline for fact witness depositions to 60 days before the parties disclose their respective experts on CERCLA allocation.

**1. The technical record is still being developed by Continental, the Linwood Defendants, and the IDNR.**

This case is about identifying the source(s) of alleged groundwater contamination beneath Continental's property, determining who is responsible for such contamination, and assigning responsibility for costs of investigation and remediation. *See* Continental's Second Amended Complaint (Dkt. No. 97), generally. In April of this year, Continental filed a *Motion to Amend Scheduling and Trial Setting Order*. *See* Dkt. No. 169. In its *Response* to Plaintiff's *Motion* (Dkt. No. 170), Lafarge addressed the schedule within the context of the ongoing investigations and the IDNR's work in that regard by stating:

> The Iowa Department of Natural Resources ("IDNR") is the state governmental agency charged and empowered to protect Iowa air, land, and water. In furtherance of its responsibilities, IDNR is requiring Continental and Linwood to independently investigate the alleged groundwater impacts at issue in this litigation, and to develop plans to mitigate any impacts IDNR determines to exist. *See Second Amended Complaint* at ¶¶ 48, 52-56. No mitigation plans have been approved by IDNR, and the Continental and Linwood investigations that serve as a necessary prelude to such plans are ongoing. *See Second Amended Complaint* at ¶¶ 53-56. In sum, the state agency responsible for protecting Iowa air, land, and water is actively involved at the site and it is ***currently*** addressing some of the complex technical matters at issue in this case.[4] (emphasis in original)

Seven months later, this description remains true. Continental and Linwood are still investigating the alleged groundwater impacts at issue in this litigation, the IDNR is still actively overseeing those efforts, and no mitigation plans have been approved by the IDNR. Even basic conclusions such as identifying the source(s) of groundwater impacts and the direction groundwater flows between the Continental property and the Linwood property remain uncertain. *See, e.g.*, Exh. 6 to the Linwood Defendants' *Motion* at 2.

---

[4] *See* Lafarge's *Response to Plaintiff's Motion to Amend Scheduling and Trial Setting Order* (Dkt. No. 170 at ECF p. 8) (wherein Lafarge also expressly reserved its right to seek further adjustments to the schedule based upon IDNR's regulatory requirements and oversight, including the ongoing investigations being conducted by Continental and Linwood at the direction of IDNR).

**2. The technical record and causation evidence is relevant to the CERCLA and contract claims between Continental and Lafarge.**

In its Second Amended Complaint, Continental contends the Linwood Defendants are responsible for the groundwater contamination beneath Continental's property. *See* Dkt. No. 97 at ¶¶ 34-51 and 59-82. In their respective Answers, the Linwood Defendants deny responsibility and assert counterclaims against Continental, alleging that the CKD landfill on Continental's property is the source of such groundwater contamination. *See* Dkt. Nos. 107, 108, and 109. Continental continues to deny the CKD landfill is causing groundwater contamination beneath its property but, if the CKD landfill on Continental's property is proven to be a cause of such contamination, Continental wants Lafarge to pay for the costs of investigation and remediation pursuant to theories of recovery under CERCLA and the parties' 2015 Asset Purchase Agreement. Dkt. No. 97 at ¶¶ 58, 94, 104, and 171.

The IDNR is currently investigating groundwater conditions beneath the Continental property and the Linwood property as part of the IDNR's efforts to determine the source(s) of groundwater contamination beneath Continental's property. *See, e.g.*, Exh. 2 to the Linwood Defendants' *Motion*. The IDNR's conclusions with regard to whether, and to what extent, the CKD landfill is affecting groundwater conditions beneath Continental's property is directly relevant to the CERCLA and contract claims between Continental and Lafarge. For example, as part of its investigations, the IDNR will likely make determinations with regard to the timing of releases, if any, from the CKD landfill; the nature and volume of any such releases; whether Continental is operating in compliance with the IDNR permits that govern its operation and maintenance of the CKD landfill; and whether Continental's operations at the site caused any such releases from the CKD landfill. Each of these conclusions is relevant to determining the parties' respective CERCLA

liability, the allocation of any such liability under 42 U.S.C. 9613(f), and the parties' respective contractual obligations under the 2015 Asset Purchase Agreement.

**3. The technical record and causation evidence is relevant to Continental's common law claims against the Linwood Defendants.**

Continental is asserting trespass, nuisance, and negligence claims against the Linwood Defendants and each of these claims is likely to be affected by an IDNR technical record that will continue to be developed after the current December 31, 2026 deadline for fact witness depositions. For example, if and when the IDNR determines remedial action is required at the Continental property and/or the Linwood property, that determination may be understood as an express or implied finding on the cause(s) and source(s) of groundwater contamination in the area.

Although Lafarge does not have a direct stake in the outcome of these claims between Continental and the Linwood Defendants, the Court's adjudication of such claims may indirectly affect Lafarge's interests because those adjudications are relevant to the Court's CERCLA allocation proceedings and the Court's obligation to prevent "double-recovery" when assessing the merits of Continental's claims for CERCLA response costs.[5]

***4. CERCLA allocation requires findings of causation and harm.***

For purposes of establishing CERCLA *liability*, the court's focus is whether a defendant's release or threatened release of hazardous substances caused harm to the plaintiff in the form of response costs. *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935 (8th Cir. 1995). However,

---

[5] *See Order Granting in Part Motion to Amend Scheduling Order* (Dkt. No. 177 at ECF p. 4) ("Allowing the experts the benefit of knowing what parties are liable under what theories of liability will streamline the expert report process. Because allocation under CERCLA cannot be decided until liability is determined."); *K.C. 1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009, 1017-18 (8th Cir. 2007) (vacating the district court's monetary judgment and remanding the case for the district court to consider potential offsets to the judgment in conformance with CERCLA's policy against double recovery); *and* 42 U.S.C. § 9614(b) (prohibiting duplicate recovery for the same removal costs).

for purposes of *allocating* liability, the focus is on whether a defendant caused actual harm to the environment. *Id*. "Courts have considered various factors in resolving contribution claims but the 'Gore factors'…are the most widely used." *Id*. The Gore factors are:

1. The ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished;

2. The amount of hazardous waste involved;

3. The degree of toxicity of the hazardous waste;

4. The degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;

5. The degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and

6. The degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment. *Id*.

The regulatory and technical record on these issues is currently incomplete, and will remain incomplete well beyond the December 31, 2026 deadline. For example, the parties and the IDNR are continuing to investigate whether and to what extent any releases of hazardous substances have occurred at the Continental property and the Linwood property; whether any contaminants have traveled from the Linwood property to the Continental property; whether any party's actions have caused or contributed to any such releases; and whether any releases of hazardous substances proven to exist may be distinguished. Answers to these questions are still being pursued through investigations directed by the IDNR.

Moreover, the nature of a selected remedy at a site may influence how a court allocates costs. If releases of hazardous substances from one party triggered a special or more expensive remedy, the court may assign a greater percentage of response costs to that party. Because investigations of groundwater conditions beneath the Continental and Linwood properties is ongoing, the IDNR has not yet identified the selected remedy, if any, for the site.

**B. Lafarge will be prejudiced if the deadline for fact witness depositions is not extended.**

Lafarge understands Continental may use external communications with regulatory agencies such as the IDNR to support its claims and defenses in this case. Lafarge is not involved in the investigations being conducted by Continental and Linwood, and Lafarge is not part of the communications between Continental and the IDNR or the communications between Linwood and the IDNR. Therefore, discovery is the *only* means by which Lafarge will have access to information that is relevant to Lafarge's claims and defenses in this case, including information required to support Lafarge's position on CERCLA allocation. Lafarge's ability to conduct fact witness depositions is critical to its ability to obtain relevant information that is not otherwise available through documents or written discovery.

**C. No party will be prejudiced by extending the deadline for fact witness deposition.**

Under the current Scheduling Orders, fact discovery will end 18 months before the trial on CERCLA liability, approximately 27 months before the trial(s) on the parties' contract and common law claims, and approximately 35 months before the trial on CERCLA allocation. *See* Section II, *supra*, and Dkt. Nos. 177, 193, and 201. If the Court were to extend the December 31, 2026 deadline for fact witness depositions to December 31, 2027 (as proposed by the Linwood Defendants) or to 60 days before the deadline for parties to disclose their respective expert reports on CERCLA allocation (as proposed by Lafarge), no party would be prejudiced.

The Linwood Defendants and Lafarge agree that the December 31, 2026 deadline for written fact discovery can remain unchanged because the parties' written discovery requests are quite extensive and each party will have a continuing obligation under Rule 26(e) to update its discovery responses to reflect updates to the technical record and IDNR-related activities and communications. And, although all parties agreed during the meet and confer discussions that the deadline for fact witness depositions should be extended, the parties are not currently seeking to

increase the number of fact witness depositions. Each party has the ability to conduct 20 fact depositions. *See Scheduling and Trial Setting Order* at Dkt. No. 143. Under the existing Scheduling Orders, this case is unlikely to be finally resolved until sometime in late 2029, at the earliest. Regardless of whether any party chooses to conduct its allocated 20 depositions over a few months or over a longer period of time as this case progresses toward allocation, the burden is the same: 20 depositions per party. Each party should be allowed to determine when it is appropriate to conduct its allocated share of fact witnesses as it determines most appropriate.[6]

**D. Events occurring after December 31, 2026 will be relevant to the Court's equitable allocation of CERCLA liability.**

Although district courts have discretion to weigh equitable factors when allocating CERCLA liability, they must first ensure that the parties have adequate time to develop the relevant factual record. *See, e.g., NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 701-703 (7th Cir. 2014) (reversing the district court's single-factor allocation because the district court did not allow the parties to conduct discovery on other potentially relevant equitable factors). District courts "must decide what is relevant based on the record as a whole; an allocation based on otherwise permissible factors will not be rescued if it does not explain why the court has chosen to disregard other apparently relevant information." *Id.* at 702.

Here, evidence relevant to the Court's CERCLA allocation will likely include, *inter alia*: groundwater sampling that will take place after Linwood stops exhausting lime kiln dust in and

---

[6] This approach is consistent with the sequencing of discovery identified in the CERCLA section of the Manual for Complex Litigation (Fourth) § 34.28 (discovery in CERCLA cases should be coordinated, with consideration of initially developing the factual record through disclosures of documents, reports, studies, and other information regarding the site and volume and type of contaminants, and written discovery seeking information about sampling and testing at the site, and facilitation of efficient depositions may be achieved by requiring document discovery to precede depositions).

through the underground mine stope in February 2027; IDNR's response to Linwood's October 31, 2026 Site Assessment Report; the "3D geological conceptual model" Continental anticipates completing "sometime in Spring 2027"; and the IDNR's selection of an appropriate remedy, if any, at the Continental property and/or the Linwood property. Each of these events will take place after the current December 31, 2026 deadline for fact witness depositions.

The parties' allocation experts should not be asked to form their opinions in a vacuum, and any attempt to limit their access to relevant information runs counter to Fed. R. Evid. 702 which requires expert opinions to reflect a reliable application of the principles and methods to the facts of the case. Extending the deadline for fact witness depositions would allow Lafarge (and the other parties) to conduct discovery that will inform the allocation expert opinions and the Court's consideration of CERCLA equitable allocation factors such as: the parties' relative contribution to the contamination requiring remediation; whether hazardous substances associated with operations on the Continental property can be distinguished from hazardous substances associated with operations on the Linwood property; whether any party's actions caused the selected remedy to be more expensive; and the parties' relative degree of cooperation with IDNR officials to prevent any harm to the public health or the environment.

## V. CONCLUSION

For the reasons set forth above, and as incorporated by reference and adoption of the authorities identified in the Linwood Defendants' *Motion*, Lafarge respectfully submits that there is good cause:

A. to extend the December 31, 2026 deadline for fact witness depositions until 60-days before the parties disclose their respective expert reports on CERCLA allocation, and

B. to amend the Scheduling Orders, in the manner set forth under either Option 1 or Option 2 in the Linwood Defendants' *Motion*.

Dated this 3rd day of November 2026.

Respectfully submitted,

LAFARGE NORTH AMERICA INC.

By /s/ ***Marcus P. Zelzer***

Matthew M. Enenbach, AT0012613
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102-2103
Phone: (402) 346-6000
Facsimile: (402) 346-1148
Matthew.Enenbach@KutakRock.com

Marcus P. Zelzer, AT0014571
Kutak Rock LLP
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402-4018
Phone: (612) 334-5000
Facsimile: (612) 334-5050
Marcus.Zelzer@KutakRock.com

Paula Jantzen, admitted *pro hac vice*
Stephen Jantzen, admitted *pro hac vice*
Laura Finley, admitted *pro hac vice*
Grant Lucky, admitted *pro hac vice*
Ryan Whaley PLLP
400 N. Walnut Avenue
Oklahoma City, OK 73104
Phone: (405) 239-6040
Facsimile: (405) 239-6766
pjantzen@ryanwhaley.com
sjantzen@ryanwhaley.com
lfinley@ryanwhaley.com
glucky@ryanwhaley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2026, a true and correct copy of the foregoing was filed electronically to the Clerk of Court via the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Marcus P. Zelzer*
Marcus P. Zelzer